ARMINE W. LITTLEFIELD *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Middlesex.    January 18, 1888. — March 2, 1888.

Present: MORTON, C. J., DEVENS, HOLMES, & KNOWLTON, JJ.

*Town — Selectmen — Deed — Adverse Possession — Equitable Title — Statute.*

A town voted, at a meeting held in November, 1838, to refer the sale of land to a railroad corporation to the selectmen, and in October, 1839, the selectmen then in office made a deed thereof to the corporation. *Held,* that no title passed by the deed.

Land adjoining a railroad was occupied openly, adversely, and exclusively from 1852 to 1880, during which period a railroad corporation claimed an equitable right to it, but did not take actual possession until the latter year. *Held,* that title was gained to the land by adverse possession, and that the St. of 1861, c. 100, relating to such titles, did not apply.

WRIT OF ENTRY, dated August 16, 1884, to recover a parcel of land in Newton. Plea, *nul disseisin.* Trial in the Superior Court, before *Thompson,* J., who allowed a bill of exceptions, which, so far as material, was as follows:

The demanded premises were a strip of land bounded on the east by Rowe Street, on the north by land of the demandant, on the west by land now or late of Washburn, and on the south by land of the tenant. The northerly line of the demanded premises was indicated by a retaining wall recently erected by the tenant, and the southerly line by a straight line, which was at its westerly end fourteen feet and six inches north of the centre

line between the two present middle tracks of the railroad, and fifteen feet and six inches north of the centre line at its easterly end. The demanded premises, the land of the demandant, and that of the tenant opposite thereto, were formerly a part of the poor-house farm of the town of Newton.

The demandant offered in evidence a deed, dated May 15, 1847, from the town of Newton to William Jackson, which conveyed to him the poor-house farm, " being represented on a plan drawn by Seth Davis, dated April 30, 1847," and " reserving and excepting nevertheless so much of this parcel of land as belongs to the Boston and Worcester Railroad Corporation, whose road runs through the same"; that in 1877 she had acquired title, by mesne conveyances from Jackson, to that portion of the land so conveyed to him which was situated on the northwesterly corner of Rowe Street and the railroad ; that the southerly boundary of her land on the railroad was indicated by a picket fence with turned posts; that the fence stood on the southerly line of the demanded premises, and was erected in 1852 by one Adams, who then owned the land of the demandant; that from and after 1852 she and those persons through whom she claimed had occupied the demanded premises; that the tenant destroyed a portion of the fence in 1880 and the remainder in 1883, and since those years had occupied the parts of the demanded premises north of the portion of the fence so destroyed; and introduced the deposition of Washburn, who testified that the fence stood on the southerly line of the demanded premises. The demandant contended that she was entitled to maintain her action by proof of more than twenty years' adverse possession of the demanded premises.

The tenant offered in evidence a deed dated September 25, 1833, from the inhabitants of Newton to the Boston and Worcester Railroad Corporation, of which the tenant was the successor, conveying, in consideration of three hundred dollars, " the receipt whereof is hereby acknowledged," a strip of land through the poor-house farm about forty-six rods long and about two rods wide at its easterly end and about three rods wide at its westerly end, " as now staked out or fenced for said corporation railroad," and covenanting " that said inhabitants will and their assigns shall make, keep, and maintain at all times here-

after a good and sufficient wall or walls, fence or fences, on the boundary lines between their own lands aforesaid and the premises above granted, which fences or walls shall be forever kept, maintained, and made at their expense and the expense of their assigns."

The tenant also offered evidence that the records of the town of Newton contained a copy of a warrant, dated October 23, 1838, for a town meeting to be held on November 12, 1838, article 4 of which was as follows: " To see if the town will authorize the selectmen to sell so much land on each side of the Worcester Railroad near the poor-house as will make the line straight"; that the record of the meeting of November 12, 1838, contained the following action under article 4 : " 4th article was referred to the selectmen "; that on October 1, 1839, the " selectmen of the town of Newton, in consideration of eighteen dollars to us paid by the Boston and Worcester Railroad corporation, the receipt whereof is hereby acknowledged," conveyed to it " two certain strips or parcels of land, being a part of the poor-house farm in said Newton, containing about forty-eight square rods lying on both sides of said railroad as it passes through said poor-house farm, and making together with what said railroad corporation had previously purchased a lot of land fifty-six feet wide and about forty-six rods in length. The northerly line of said northerly strip of land being thirty-one feet from the northerly rail of said railroad track," or thirty-eight feet from the centre line between the two present tracks of the railroad; and that the treasurer's books of the town of Newton contained the following entry: "1840, Jan. 1, Cr.  Cash of Boston and Worcester Railroad for additional land and removing fences, $30.66." It appeared that the premises described by the deed of 1839 were not wholly occupied by the railroad until 1883.

Edward D. Bolton, called by the tenant, testified that he was a civil engineer; that between April, 1871, and December, 1873, he took certain measurements by which he got the position of the picket fence with the turned posts adjoining the demandant's land ; that he measured from the centre line between the two existing tracks of the railroad to the picket fence, which was situated northerly, and distant from the centre line twenty-seven and ten one-hundredths feet on Rowe Street, and seventeen and

seven tenths feet at the other end thereof; that he also measured from the centre line to where certain fences then were on the southerly side of the railroad opposite the picket fence, and that the measurement was twenty-seven and ninety-five one-hundredths feet near one Kimball's; that he should say that the Kimball fence was, an old fence, as it was weather-beaten and had been built some time; that twenty-eight feet measured from the centre line northerly extended into the land beyond the fence he found on the demandant's land, to some extent. On cross-examination, he stated that he did not know whether the fence existing on Kimball's land at the time of the survey corresponded with the present fence there or not.

Walter Shepard, called by the tenant, testified that he was a civil engineer; that the retaining wall, which was built in 1883 upon the demanded premises, was built upon a line parallel with and twenty-eight feet northerly from the centre line, between the centre tracks, which were in the same position as the tracks which existed there in 1873; that the wall was placed upon the line which he obtained from the deed dated October 1, 1839; that a line measured thirty-one feet northerly from the north rail of the first railroad track that was built by the railroad would agree with the face of the retaining wall as it existed at the time of the trial; that the southerly line of a strip of land fifty-six feet wide would agree with the fence on the south side of the railroad, against the land of Kimball, as it existed at the time of the trial; and that, to get a strip of land fifty-six feet wide, measuring from the present fence against Kimball's land, it would be necessary to come out as far as the face of the retaining wall on the northerly side of the railroad.

The tenant further introduced in evidence a deed dated June 6, 1843, from the "selectmen of the town of Newton" to the Boston and Worcester Railroad Corporation, conveying, "in consideration of twenty-seven dollars to us paid" and "the receipt whereof is hereby acknowledged," a strip of land adjoining that previously conveyed on the north, "with the condition that said corporation build at their own expense all the fence necessary on the southerly line of said lot separating the same from the railroad, — said fence to be of as good quality as that lately removed by said corporation, — and when built, said town is to maintain

the fence on said line hereafter forever." It did not appear that any portion of the land described by the deed of 1843 was occupied by the railroad prior to 1883.

The tenant asked the judge to rule and instruct the jury as follows: " 1. That the vote of the town of Newton of November 12, 1838, under article 4 of the warrant, authorized the selectmen to sell so much land of the poor-farm as would make the line straight. 2. The deed of the selectmen of Newton, dated October 1, 1839, and the receipt of the consideration thereof by the town, if proved as facts, establish the boundary of the land of the town and the railroad company, and the town of Newton and persons claiming through or under it are bound thereby. 3. On the evidence in this case, the demandant has shown no title to any part of the strip of land the northerly side of which is parallel with and twenty-eight feet northerly from the centre or base line of the railroad. 4. The deed of September 25, 1833, the deed of October 1, 1839, and the deed of June 6, 1843, to the railroad corporation, if the jury shall find that the town of Newton received the consideration of said deeds, determine the extent of the exception of the deed from the town of Newton to William Jackson, and the jury are authorized upon the evidence to find that, when said town conveyed to Jackson its poor-farm, it did not convey to him any of the land described in said first mentioned deeds, but that the same then belonged to the railroad corporation. 5. The recital in the deed of Newton to Jackson, excepting therefrom whatever then belonged to the Boston and Worcester Railroad Corporation, taken in connection with the fact that the deeds to the company purported to convey the property on which the railroad then existed and was in operation, may be taken by the jury as an admission by the town that those deeds conveyed title to the company."

The judge declined so to rule as requested by the tenant, but instructed the jury that the deed of October 1, 1839, and the deed of June 6, 1843, were not operative to convey any title whatever to the Boston and Worcester Railroad Corporation, and said, " So far as the deed of 1839 is concerned, I rule to you, as matter of law, that that deed did not convey to the Boston and Worcester Railroad Company the piece of land which the parties who made that deed intended to convey; but if the

Boston and Worcester Railroad occupied or did have possession of only that, if they took a valid deed by that, then I should rule to you that the demandant could not obtain adverse possession; but that is not material, as I have ruled to you as matter of law that no title to that piece of land passed to the Boston and Worcester Railroad Company;" that the case was to stand as if those deeds had never been given; that, if the jury should find that the demandant, and those under whom she claims, had had open, exclusive, and adverse possession of the demanded premises from 1852 to 1880, then, so far as was necessary to obtain a title by adverse possession, the demandant had shown herself to come within the rule; that, if they found for the demandant up to the fence, they should find, upon the evidence, as matter of fact, the line upon which the fence was constructed and maintained, because the demandant does not claim that she has a claim to land south of that fence; and that " no adverse occupation of the land belonging to the railroad corporation since 1852 will give any title against it."

The jury found that the tenant had disseised the demandant of so much of the demanded premises as lay north of a line which was twenty-seven and ten one-hundredths feet north of the centre line between the two middle tracks of the railroad at the easterly end, and seventeen and seventy one-hundredths feet north of the centre line at the westerly end, of the demanded premises, which was the line of the fence as placed by the tenant's witnesses, and northerly of the line as placed by the demandant and by Washburn. The tenant alleged exceptions.

*Samuel Hoar,* for the tenant, contended, among other things, that the words " land belonging " to a railroad corporation, in the St. of 1861, c. 100,* do not mean simply land to which the rail-

---

* This statute is as follows: " If the owner or occupant of any land adjoining any railroad in this Commonwealth has taken or shall take into his enclosure any part of the land belonging to said railroad, as located and established, or has erected or shall erect any building upon, or has occupied or shall occupy, for the purposes of cultivation or otherwise, any land belonging to, or included within, the location of any such railroad, no continuance of such enclosure, building, or length of possession or occupancy of the land belonging to such railroad, so enclosed or occupied, shall create in such adjoining owner or occupant, or in any person claiming under him, any right to the land belonging to such railroad so enclosed or occupied."

road corporation has a perfect title in fee simple, but rather land from which it has a right to exclude intruders; that as to the land described in the deed of 1839, the tenant had paid the town of Newton the purchase money, had paid for removing fences separating it from their original location, had entered into possession and erected new fences, and had taken a deed of it from the selectmen of Newton, which statements were partly true of the deed of 1843; that it became entitled therefore in equity, in 1847 and 1852, to a conveyance from the town of Newton of the legal title of the land described in one or both of these deeds, if it should be decided by the court that those deeds were insufficient to convey the legal title; *Potter* v. *Jacobs*, 111 Mass. 32; and that the words of the statute, " belonging to," included, covered, and protected such a title and interest in the railroad corporation.

*E. M. Parker & J. G. Thorp, Jr.*, for the demandant.

KNOWLTON, J.   The evidence at the trial tended to show, and the jury must have found, that from the year 1852 to the year 1880 the demandant occupied openly, adversely, exclusively, and continuously so much of the demanded property as was described by the jury in their verdict.   The tenant did not contradict this evidence, but rested its defence solely upon certain deeds and accompanying evidence, under which it claimed an early title, and upon the St. of 1861, c. 100, which prevented the acquisition of titles by adverse possession against railroad companies in certain cases.   If it showed such an ownership of any part of the land as to make this statute applicable, the verdict must be set aside; otherwise, it must stand.

To support its claim, the tenant introduced three deeds to the Boston and Worcester Railroad Corporation, to whose rights it had succeeded, made by the selectmen of Newton, and purporting to convey portions of the land of said town, one dated September 25, 1833, another dated October 1, 1839, and the third dated June 6, 1843.   There was no evidence that the first covered any part of the demanded premises, nor that the third was ever authorized by said town or recognized by it in any way. The second included in its description a part or all of the land in controversy.   If under this deed the land described in it belonged to the railroad, and came within the meaning of the

language referring to lands of railroads in the St. of 1861, c. 100, the passage of that statute prevented the acquisition afterward of a title to the property by adverse possession, and the previous possession relied on by the demandant having been for less than twenty years, her case was not made out.

Three objections were made to the validity of this deed. First, that the language of the vote of the town under which the selectmen acted was not broad enough to authorize a sale; secondly, that, if authority to sell was given by the vote, it was to the board of selectmen then existing, and not to that of the next year; and thirdly, that the deed was not properly executed to convey the interest of the town

The first and last of these it is unnecessary to consider. For if we assume, as was decided in *Willard* v. *Newburyport*, 12 Pick. 227, in regard to a similar vote, that a reference of this subject to the selectmen conferred upon them authority, not merely to determine what should be done, but to do it, we think the authority was not intended to extend to other boards of selectmen who might be elected in subsequent years. The subject of the vote was a proposed sale of certain land, and the question was whether the town would authorize it. In respect to the answer to be given, it was a question which looked to the present, and not to the future. If the language of the vote is construed as a reference of the whole matter to the selectmen with power to act, it implied that they were to deal with the question presently, and to decide it finally without unreasonable delay. The authority was conferred upon an existing board of public officers. The vote was passed in November, 1838, and, as the law then was, the term of office of all these officers would expire in the following spring, and a new board would then be chosen. It must be presumed that in giving this authority the voters considered the membership of the existing board, and that they did not intend to allow the question to be postponed and afterwards determined by a board of selectmen that might be elected the next or any subsequent year. We think, therefore, that the deed made in October, 1839, was without authority of the town, and that the railroad companies acquired no title under it.

There was no evidence which would warrant the jury in finding that the Boston and Worcester Railroad Corporation, or the

tenant, had actual possession of any part of the premises de-
scribed in the verdict prior to the year 1880; and even if the St.
of 1861, c. 100, — the language of which is very different from
that in the substituted St. of 1874, c. 372, § 107, (Pub. Sts.
c. 112, § 215,) — could be held to apply to land outside of a lo-
cated or established railroad, and if the evidence in this case
would warrant a finding that the town of Newton received a
consideration for this land, we do not think the equitable right
of the tenant or of its predecessor, if either of them had any,
would prevent the acquisition of a title by the long continued
adverse possession of another.

It follows that the St. of 1861, c. 100, has no application to
this case, and that there was nothing to control the effect of the
adverse possession proved at the trial.   All the requests for in-
structions to the jury were either in conflict in some particular
with the law as we have stated it, or were immaterial, and there
was no error in the instructions given.

*Exceptions overruled.*