THOMAS J. MANEY *vs.* PROVIDENCE AND WORCESTER RAILROAD COMPANY.

THOMAS F. MATHEWS *vs.* SAME.

Worcester.    March 2, 1894. — May 16, 1894.

Present: FIELD, C. J., ALLEN, MORTON, LATHROP, & BARKER, JJ.

*Real Action — Adverse User — Statute.*

The St. of 1861, c. 100, entitled "An Act defining the rights of owners or occupants of land adjoining railroads," applies only to the location of the railroad corporation, and not to land acquired by purchase adjoining the location.

TWO WRITS OF ENTRY, dated February 7, 1893, to recover two parcels of land in Worcester. Pleas, *nul disseisin.*

The cases were submitted to the Superior Court, and, after judgment for the demandants, to this court, on appeal, on agreed facts, in substance as follows.

In 1846, one Goddard owned the land described in the writs, and the lands adjacent thereto. In that year he conveyed to the tenant a tract which was described in part as " running as now staked out for said railroad company, and measuring six rods from the centre line of said stakes on the easterly side and four rods on the westerly side, said company to erect a good and sufficient fence on both sides of said piece of land and forever maintain the same." In June, 1847, the tenant filed its location for a railroad, " being two and one half rods on each side of the centre line of said road, which was the same line described as the centre line in the Goddard deed to the tenant, and the westerly line of this location was the easterly line described in the deeds of the demandants."

Very soon after this the tenant entered upon the land described in its location, and erected along the line thereof, two and one half rods westerly of the centre line, a wooden fence of rails and posts, parts of which still remain.

The demanded premises, to wit, the space one and one half rods wide westerly of the fence and between it and the westerly line of the Goddard conveyance to the tenant, were included in a conveyance of about nine acres of land from Goddard to one Chase, made on August 31, 1847, which included also all the above described land of the demandants.

The demanded premises were entered upon, cultivated, and occupied under claim of title by Chase immediately after this conveyance to him, and occupied and improved as farming land, and later subdivided into building lots, by him and his successors in title, including the present demandants, openly, exclusively, and uninterruptedly from that date until about the 1st of January, 1890, when the tenant entered upon the premises and dispossessed the demandants.

The demanded premises, from 1847 to the time when the land was built upon and since, were cultivated up to the fence erected by the tenant in that year. The tenant in 1880 surveyed its estate, and put stakes on its line as now claimed at each end, without otherwise disturbing the demandants' oc-

cupation and without their knowledge or consent, the demandants never having heard of this survey until after their suits were brought.

The taxes on the lots of land respectively demanded were assessed to the demandants and their predecessors in title, and were paid by them from 1847 to 1890 without the knowledge of the tenant. In 1890 and thereafter the tenant was assessed for the taxes, and paid them.

The demandants and their predecessors in title had no actual notice of the claim of the tenant to the demanded premises until the receipt of a letter in 1889 from the tenant's superintendent.

*W. A. Gile*, for the tenant.

*J. R. Thayer & A. P. Rugg*, for the demandants.

LATHROP, J. The principal question which arises in these cases is as to the construction of the St. of 1861, c. 100, which reads as follows; " If the owner or occupant of any land adjoining any railroad in this Commonwealth, has taken or shall take into his inclosure, any part of the land belonging to said railroad, as located and established, or has erected or shall erect any building upon, or has occupied or shall occupy for the purposes of cultivation or otherwise, any land belonging to or included within the location of any such railroad, no continuance of such inclosure, building, or length of possession or occupancy of the land belonging to such railroad, so inclosed or occupied, shall create in such adjoining owner or occupant, or in any person claiming under him, any right to the land belonging to such railroad so inclosed or occupied."

This statute has been before the court in three cases, but in none of them was the question now before us involved. *Fisher* v. *New York & New England Railroad*, 135 Mass. 107. *Turner* v. *Fitchburg Railroad*, 145 Mass. 433. *Littlefield* v. *Boston & Albany Railroad*, 146 Mass. 268.

The tenant contends that this statute applies not only to land included within the location of a railroad, but also to land acquired by purchase lying adjacent to the location. The meaning of the statute is not free from doubt. The words " as located and established " plainly refer to the land included within the location which the railroad corporation has the right

to take by the right of eminent domain. The clause " or shall occupy for the purposes of cultivation or otherwise, any land belonging to or included within the location of any such railroad " may be read so as to apply either to the location or to any land belonging to the railroad. Thus, if commas should be inserted after the words " to " and " within," the meaning would be plain that the land to which the statute was intended to apply was that within the location, although the words " belonging to " would be superfluous. On the other hand, if commas were inserted after the words " to " and " of," the meaning would be equally plain that the statute applied to any land of the railroad, if the word " railroad " is equivalent to railroad corporation; and this is the construction contended for by the tenant.

In citing the act at length, we have followed the punctuation contained in the Acts and Resolves. In the Supplement to the General Statutes, prepared by Mr. Richardson and Mr. Sanger, and published by the Commonwealth, commas are inserted after the words " to " and " within," and an examination of the original act at the State House shows that their punctuation in this respect follows that of the original act.

If, however, we disregard the punctuation, ( *Cushing* v. *Worrick,* 9 Gray, 382, and *Martin* v. *Gleason,* 139 Mass. 183,) the more natural and obvious meaning seems to us to be that the words used apply only to the location.

In the last clause, the words " the land belonging to such railroad " must refer to the land before mentioned.

In 1874, the general laws relating to railroads were not only consolidated, but revised, as the title to the act shows. St. 1874, c. 372. By § 182, the St. of 1861, c. 100, and other acts, were expressly repealed; but by § 183 the repeal did not affect " any act done, or any right accruing, accrued, or established." As the demandants' rights had already accrued, they were not affected by the passage of the act.

The tenant contends that § 107 is to be considered as a legislative interpretation of the St. of 1861, c. 100. This section reads as follows : " No length of possession or occupancy of land belonging to a railroad corporation, by an owner or occupier of adjoining land shall create any right to such land of the corpo-

ration in such adjoining owner or occupier, or any person claiming under him." See also Pub. Sts. c. 112, § 215. If the St. of 1874 were merely a consolidation of existing acts, there might be some force in the tenant's argument; but as it was also a revision of the laws, we are of opinion that, as this section of the St. of 1874, is so different from the St. of 1861, it can have no effect in interpreting the St. of 1861.

The judgments rendered in the Superior Court for the demandants must be                                        *Affirmed.*