OSBORN B. HALL *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.     November 22, 1911. — February 29, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Way*, Private. *Adverse Use. Railroad. Words*, "Occupancy."

The acquisition by an adverse user extending from 1868 to 1908 of a right of way running longitudinally over and along a portion of the land comprised in the location granted to a railroad corporation by county commissioners in 1845 is not prevented by St. 1861, c. 100, which remained in force and is now contained in St. 1906, c. 463, Part II, § 80, and which provided that if a landowner occupied "for the purpose of cultivation or otherwise, any land belonging to or included within the location of any such railroad, no continuance of such . . . occupancy of the land . . . shall create in such adjoining owner . . . any right to the land . . . so . . . occupied."

PETITION, filed on February 26, 1910, for the assessment of damages alleged to have resulted to the plaintiff from the abolition of a grade crossing of Pleasant Street in Malden by the railroad of the defendant.

In the Superior Court the case was tried before *King*, J. It appeared that the defendant had succeeded to the rights of a corporation named the Boston and Maine Extension Railroad, which had been incorporated by St. 1844, c. 172, and which had acquired its location in 1845 by filing a petition and plan of location with the county commissioners as required by the statutes then in force. It also appeared that, unless precluded from doing so by the statutes cited in the opinion, the petitioner had acquired by adverse use from 1868 to 1908 a right of way running longitudinally over

and along land included in the defendant's location. In the aboli-
tion of the grade crossing, such right of way was destroyed and
land of the petitioner was taken.

The trial judge ruled that the statutes referred to did not pre-
clude the acquirement of the right of way by adverse use. In
answer to special questions the jury found the damages suffered
by the petitioner exclusive of the destruction of the right of way to
be $4,166.19, and the damages resulting from the destruction of
the right of way to be $7,259.50; and the case was reported to this
court for determination of the question, whether judgment should
issue for $4,166.19, or for $11,425.69.

*J. J. Myers,* (*A. H. Brooks* with him,) for the petitioner.

*G. S. Selfridge,* for the respondent.

RUGG, C. J. The petitioner being an owner of land adjoin-
ing the railroad location claims a private right of way longitudi-
nally over and along a portion of the location of the respondent
acquired by continuous, open and adverse use from 1868 to 1908.
The question is whether such an easement can be gained by pre-
scription since the enactment of St. 1861, c. 100, now St. 1906,
c. 463, Part II, § 80. The material words of the earlier statute are
that if such landowner occupies "for the purpose of cultivation
or otherwise, any land belonging to or included within the loca-
tion of any such railroad, no continuance of such . . . occupancy
of the land . . . shall create in such adjoining owner . . . any
right to the land . . . so . . . occupied." The language of the
earlier act was not changed substantially in St. 1874, c. 372,
§ 107, and Pub. Sts. c. 112, § 215, in which the St. 1861, c. 100,
was successively embodied, and which were in force during the
period within which the petitioner's prescriptive period was rip-
ening. This statute was first before the court in *Fisher* v. *New
York & New England Railroad,* 135 Mass. 107, which held that
its terms did not prevent the acquisition of a private right of
way across a railroad location. Upon the authority of this case
*Deerfield* v. *Connecticut River Railroad,* 144 Mass. 325, was de-
cided, although according to the plan there referred to and
with the original papers in the case it appears that a part
of the prescriptive right of way there established ran along the
railroad location for about three hundred feet before crossing
it. To the same effect are *Turner* v. *Fitchburg Railroad,* 145

Mass. 433, and *Fitchburg Railroad* v. *Frost,* 147 Mass. 118.  In *Maney* v. *Providence & Worcester Railroad,* 161 Mass. 283, it was held that the statute did not prevent prescriptive acquirement of title to land outside of the location owned by a railroad by virtue of a purchase.  See also *Littlefield* v. *Boston & Albany Railroad,* 146 Mass. 268.  None of these decisions exactly covers the facts of the case at bar, yet in principle they seem to include it. So far as the language of the statute goes, it no more inhibits the gaining of a prescriptive easement of travel longitudinally along, than it does transversely across, the location.  But it was said in *Fisher* v. *New York & New England Railroad,* 135 Mass. 107, at 109,"Neither in the letter nor in the spirit of the statute is any intention to be found of cutting off the right to acquire the easement of a right of way across a railroad by twenty years' use." It is also said there that in view of other statutes in effect at its passage, its purpose was "not to allow an abutting owner to gain a title by encroaching on the land adjoining his own."  The implication of this language is somewhat toward a title ·on a parity in kind with that of the abutter.  The words, "occupy," "occupied" and "occupancy" have a tendency to indicate a permanence and continuity of possession other and greater than that required in the establishment of a right of way, which might in many instances be infrequent or intermittent.  Moreover, the words, "right to the land . . . so . . . occupied" lean slightly toward a kind of interest in the land larger in its nature than a mere easement.  Although in other connections the word "occupancy" might be given a somewhat broader meaning, yet in view of the history of these statutes and the trend of judicial interpretation of them, it should be given in this statute a narrower significance.  By St. 1892, c. 275, the Legislature for the first time prohibited the acquisition by prescription of a right of way "across any railroad track or location."  This lends color to the argument that by the St. 1861, c. 100, and its successors titles in fee and not the lesser interests of an easement were comprehended.  It is to be noted that the nature of the title which the respondent claims is that acquired by the filing of a location.  It does not assert a title acquired by deed.  That which a railroad obtains by filing a location is merely an easement for the uses for which it was incorporated.  The fee remains in the former owners.

*Lancy* v. *Boston,* 186 Mass. 128, 131.   *Cornell-Andrews Smelting Co* v. *Boston & Providence Railroad,* 202 Mass. 585, 596.   While the easement is paramount to any right remaining in the former owner, it is not necessarily exclusive.   A legislative declaration that the needs of the railroad were paramount to any particular right of the owner of the fee naturally would not be extended beyond its fair import.   The early acts of incorporation of railroads indicate a precise perception of the railroad as a highway of travel, which might be open to the general public in something the same way as turnpikes had been used.   See, for example, Sts. 1830, c. 4, §§ 5, 6; 1831, c. 72, §§ 5, 6; c. 56, §§ 5, 6; 1833, c. 118, §§ 4, 5; c. 116, § 4.   Traces of this early notion as to the functions of railroads may have survived in 1861.   It is less likely that the Legislature would prohibit to abutting owners, except by unequivocal language, the use and acquirement of rights for a way, over land devoted to a special kind of public travel, than that it should prevent by reason of the unusual character of the way the gaining of a fee therein, and thereby an extinguishment of the easement.

The conclusion is that there can be established upon the language of the statutes no sound distinction between a right of way across a railroad location and one along it.   As the former might have been acquired by prescription during the twenty years subsequent to 1868, the latter could also have been acquired in like manner.

In accordance with the terms of the report, let the entry be
*Judgment for the petitioner for $11,425.69 with all costs.*