BOSTON AND ALBANY RAILROAD COMPANY *vs.* EDMUND REARDON & another.

SAME *vs.* EDMUND REARDON.

Middlesex.    December 6, 1916. — March 5, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Railroad. Adverse Possession. Corporation, Ultra vires. Constitutional Law. Estoppel. Land Court. Evidence, Plans.*

The provision of St. 1874, c. 372, § 107 (now re-enacted in substance in St. 1906, c. 463, Part II, § 80), that "no length of possession or occupancy of land belonging to a railroad corporation, by an owner or occupier of adjoining land shall create any right to such land of the corporation in such adjoining owner or occupier, or any person claiming under him," is not restricted in its application to land within the location or right of way of the railroad corporation or to land acquired by it by the exercise of the right of eminent domain, and applies to land outside the location purchased by the corporation for railroad purposes with a genuine purpose to devote it to railroad uses.

*Whether* the statute quoted above would apply to land acquired by a railroad corporation *ultra vires*, was mentioned as a question which there was no occasion to consider.

The statute quoted above does not contravene art. 6 of the Declaration of Rights, which declares that "No man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges,

distinct from those of the community, than what arises from the consideration of services rendered to the public."

The question whether a landowner is estopped to assert his title to certain land, where it is possible to draw more than one inference from the evidence presented, is a question of fact on which the finding of a judge of the Land Court will not be reversed if there was any evidence to support it.

"The law does not regard estoppels with favor, nor extend them beyond the requirements of the transactions in which they originate." Quoted with approval from *Tracy* v. *Lincoln,* 145 Mass. 357, 360.

A railroad corporation owning in fee land outside its location, which it acquired by purchase for railroad purposes, is not estopped to assert its title to the land by having failed to pay taxes on a portion of the land which was subject to direct taxation or by having kept silent when the land was purchased at a tax sale.

Where at the trial in the Land Court of a petition of a railroad corporation for the registration of its title to certain land, a city engineer, called as a witness by the respondent, produced a plan which he testified had been furnished him by the petitioner as showing the land in question, and the respondent offered in evidence the witness's interpretation of a certain red line on this plan, the judge admitted the plan as showing the situation of the land but excluded the interpretation put upon it by the city engineer. *Held,* that the action and the ruling of the judge were right.

Even if a title in fee can be lost by abandonment, the abandonment of land owned in fee by a railroad corporation is not to be inferred from mere nonuser.

Two PETITIONS, filed in the Land Court on March 4, 1910, by the Boston and Albany Railroad Company for the registration of its title as the owner in fee simple of certain land in Cambridge.

The cases were heard together by *Davis,* J. The essential facts are stated in the opinion. One Hastings, the city engineer of the city of Cambridge, was called as a witness by the respondents. He produced a plan which, he testified, was "furnished to him" by the petitioner, showing the side line of the location of 1866, with a red line running from it. This red line was interpreted by the city engineer, in making the layout of Henry Street in 1884, as showing the side line of the railroad location. Beyond the fact that the plan was furnished by the petitioner, there was nothing to show why, under what circumstances or by what official or employee, it was made. The judge admitted the plan in evidence "as showing the situation on the ground," but ruled that the petitioner was "in no way estopped by it," and excluded the interpretation placed upon it by the city engineer.

At the request of the petitioner the judge made the following rulings:

"1. The petitioner is entitled to registration of its title as prayed for in its petition as against the respondents."

"10. Since the year 1861 the respondent Reardon cannot gain title to any of the land within the five-rod location of the petitioner by adverse possession.

"11. Since 1874 the respondent Reardon cannot gain title to any of the land of the petitioner by adverse possession.

"12. Upon all the evidence the respondent Reardon cannot gain title to the land of the petitioner by adverse possession."

"16. Upon all the evidence the petitioner has not abandoned its right to occupy for railroad purposes so much of this land as is included within the locations of December 27, 1853, and November 26, 1866.

"17. As the petitioner owns the fee, even if there had been abandonment of any part of this land for railroad purposes such abandonment would not divest it of the fee."

"19. Upon all the evidence the petitioner is not estopped from asserting its title against the respondents.

"20. The elements necessary for an estoppel against the petitioner and in favor of the respondents are lacking."

The judge found (upon the two petitions) that the petitioner was entitled to have its title registered, subject to certain easements of the city of Cambridge arising out of a taking by the city for sewer purposes in 1887 and also subject to certain rights of way. The respondents alleged exceptions.

Article 6 of the Declaration of Rights is as follows: "No man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public; and this title being in nature neither hereditary, nor transmissible to children, or descendants, or relations by blood, the idea of a man born a magistrate, lawgiver, or judge, is absurd and unnatural."

*F. J. Carney,* for the respondents.

*W. L. Parsons,* for the petitioner.

RUGG, C. J. These two petitions for the registration of title to land resolve themselves into a question of statutory construction. If the statute has one meaning, the petitioner is entitled to registration; if it has another meaning, other factors need

to be considered. The question is whether title of land, the fee in which is in a railroad corporation, can be acquired by prescription.

It was provided by St. 1874, c. 372, § 107 (now St. 1906, c. 463, Part II, § 80), in force at the time when the defendant took possession of the land in question as follows: "4. Intrusion on lands belonging to railroads. Section 107. No length of possession or occupancy of land belonging to a railroad corporation, by an owner or occupier of adjoining land, shall create any right to such land of the corporation in such adjoining owner or occupier, or any person claiming under him." A substantial part of the land in question lies outside of but adjacent to the location or right of way of the petitioner. It has been held that St. 1861, c. 100, applied only to the railroad location. *Maney* v. *Providence & Worcester Railroad*, 161 Mass. 283. But it was said in the opinion in that case in substance that St. 1874, c. 372, § 107, was not merely a consolidation of existing acts but a general revision of the railroad law, and that the later statute could have no effect in interpreting the earlier one. It was pointed out in *Littlefield* v. *Boston & Albany Railroad*, 146 Mass. 268, 276, that the language of St. 1861, c. 100, "is very different from that in the substituted St. of 1874, c. 372, § 107." Nothing contrary to this proposition was decided in *Hall* v. *Boston & Maine Railroad*, 211 Mass. 174, where, as to the facts then before the court, the successive changes and re-enactments of the statute were not material. As to the point then before the court, they had not been substantially modified. It is manifest that the scope and effect of St. 1861, c. 100, are more constricted than of the statute here involved.

The purpose of the Legislature must be ascertained. The words of the governing statute are plain. They are comprehensive. They include all "land belonging to a railroad corporation." There are no exceptions or limitations. Their sweep is not confined to land within the location nor to land which has been acquired by the exercise of eminent domain. They are broad enough to include all land which a railroad has power to acquire either by purchase or otherwise. There is no contention in the case at bar that the fee to this land was not purchased rightfully for railroad purposes and with a genuine purpose to devote it to

railroad uses. There is no occasion to consider what conclusion might be reached as to the effect of the statute upon land acquired *ultra vires.*

There appears to be no ground in reason for restricting by construction the operation of the statute to lands within the location or taken by eminent domain. The need of railroad corporations for the acquisition of land outside their locations has been recognized by the statutes for many years. Power has been conferred upon such corporations to procure such lands by private purchase from the early days of railroad development. It may be as essential to the necessities of railroads and their capacity to render efficient service to the public that their lands acquired by deed should be protected from the encroachments of adjoining owners through prescriptive occupation as that their lands acquired for the location thus should be protected.

The fact that the respondent claims a fee in the land by adverse possession and not merely an easement, distinguishes the case at bar from *Fisher v. New York & New England Railroad,* 135 Mass. 107, *Deerfield v. Connecticut River Railroad,* 144 Mass. 325, and kindred cases.

The statute as thus construed does not contravene art. 6 of the Declaration of Rights, which prohibits the granting of special privileges to any man, corporation or association of men. The real estate of railroads is in a sense impressed with a public use. Heavy obligations are imposed on them. Their operation to a considerable extent is regulated by public authorities. The real estate of such corporations may in the respect provided by the instant statute be protected against invasion by adverse possession without violation of the fundamental law. Indeed, it has been held by some decisions that, without special exemption, land granted by the government for the location of a railroad is by its very nature exempted from encroachments by adverse possession. See *Northern Pacific Railway v. Townsend,* 190 U. S. 267, and *Northern Pacific Railway v. Ely,* 197 U. S. 1.

The constitutionality of the statute has been impliedly recognized in *Maney v. Providence & Worcester Railroad,* 161 Mass. 283, and *Fisher v. New York & New England Railroad,* 135 Mass. 107, 109. See *Drouin v. Boston & Maine Railroad,* 74 Vt. 343. It is well within the principle of many decisions, in most of which

statutes imposing special burdens upon railroads have been upheld. *Missouri, Kansas & Texas Railway* v. *May,* 194 U. S. 267. *Fifth Avenue Coach Co.* v. *New York,* 221 U. S. 467. *Louisville & Nashville Railroad* v. *Melton,* 218 U. S. 36, 52. *Aluminum Co. of America* v. *Ramsey,* 222 U. S. 251. *Quong Wing* v. *Kirkendall,* 223 U. S. 59. *Missouri, Kansas & Texas Railway* v. *Cade,* 233 U. S. 642. The immunity here provided has a direct relation to the capacity of the railroad to perform its duty to the public. If its property bought and paid for with its money can be taken from it by prescription or by adverse possession, its power to serve the public is to that extent diminished. The statute is quite distinguishable in this aspect from the bill discussed in *Opinion of the Justices,* 220 Mass. 627.

The exceptions reasonably construed do not mean that the Land Court ruled that there was no evidence bearing on estoppel; but that, instructing himself as matter of law according to well recognized definitions of estoppel, he found on the evidence that the plaintiff was not estopped from asserting its title. Whether equitable or legal estoppel has been established is a question of fact where it is possible to draw more than one inference from the evidence. The finding of the Land Court will not be reversed unless there was no evidence to support it. *Hart* v. *Deering,* 222 Mass. 407, 409. *Gorton-Pew Fisheries Co.* v. *Tolman,* 210 Mass. 402, 407, 408. In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow. But the doctrine of estoppel is not applied except when to refuse it would be inequitable. "The law does not regard estoppels with favor, nor extend them beyond the requirements of the transactions in which they originate." *Tracy* v. *Lincoln,* 145 Mass. 357, 360. *Huntress* v. *Hanley,* 195 Mass. 236, 241. The respondent did not enter upon or continue in possession of the land in reliance upon what was done by the petitioner, but by reason of a tax deed. It cannot be said as matter of law that there was a duty on the petitioner to speak under all the circumstances. *Bragg* v. *Boston & Worcester Railroad,* 9 Allen, 54, 62. Its title was clear on the records. Keeping silence is not a bar to asserting title; nor is,

failure to pay taxes on the portion of the land subject to direct taxation. *Enfield Manuf. Co.* v. *Ward,* 190 Mass. 314, 316.

There was no error in refusing to admit in evidence the plan produced by the city engineer as evidence of estoppel against the petitioner. The plan was furnished by the petitioner and it was admitted as showing the situation on the ground. The interpretation placed by the respondent's witness, the city engineer, on certain marks was not binding against the petitioner. So far as the plan spoke for itself, it was admitted in evidence. *Amee* v. *Boston & Albany Railroad,* 212 Mass. 421.

There was no error in the granting of the requests respecting abandonment. Abandonment is not to be inferred from mere non-user. *Willets* v. *Langhaar,* 212 Mass. 573. *New York Central & Hudson River Railroad* v. *Chelsea,* 213 Mass. 40. Abandonment is remotely connected with the transfer of a fee to land, if indeed it is applicable at all to that kind of a title. *Tinker* v. *Bessel,* 213 Mass. 74, 77. See *White* v. *Shippee,* 216 Mass. 23. No error appears in any other of the rulings granted.

*Exceptions overruled.*