NORTH SHORE BLUE BOOK, INCORPORATED, *vs.*
ROBERT BURLEN & another.

Suffolk. January 18, 1926. — June 28, 1926.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Conversion. Estoppel. Evidence*, Admissions. *Corporation*, Officers and agents. *Trustee Process.*

One who was the president and treasurer and who had the entire management and control, and owned the majority of the shares of stock, of a business corporation, with the acquiescence of its directors delivered printed sheets of the corporation to the proprietor of a bindery, stating that they were his own, not the corporation's, and that the binding was to be done for him. The proprietor of the bindery was deceived by such statement into thinking that the sheets were the personal property of such officer. Later the officer told the proprietor of the bindery that he had assigned the sheets to a certain third person and on the same day an attachment was made by trustee process of the sheets in the possession of the bindery as the property of a second corporation, the defendant in that action. Four days later the third person wrote to the proprietor of the bindery that the property in his hands "in the name of" the first corporation had been assigned to him, the third person, by the first corporation's officer "in accordance with a vote

of the" first corporation, and he demanded the property and that the bindery turn it over to the first corporation's officer, and, upon the demand being refused, the first corporation, while the suit in trustee process was pending, brought an action of tort against the proprietor of the bindery for conversion. *Held*, that

(1) At the time of the attachment by trustee process, the proprietor of the bindery did not know whose the goods were, and the first corporation was responsible for that situation;

(2) The first corporation was estopped and could not maintain the action.

TORT OR CONTRACT for the value of certain printed sheets left with the defendants for binding. Writ dated August 16, 1923.

In the Superior Court, the action was heard by *Keating*, J., without a jury. Material facts found and rulings made by him are stated in the opinion. There was a finding for the plaintiff in the sum of $4,817.59. Both parties alleged exceptions.

*T. W. Proctor*, for the defendants.

*J. C. Johnston*, (*J. E. Hand* with him,) for the plaintiff.

CARROLL, J. This case is before us on exceptions by both the plaintiff and the defendant. The plaintiff's declaration is in tort or contract. The answer is a general denial alleging attachment of the goods by trustee process, estoppel and other defences not now material.

The plaintiff is a corporation engaged in publishing a social register. Frank C. Hyde, its president, brought certain sheets to the defendants for binding, and told Alfred Burlen, a member of the defendant firm, that the sheets were his and did not belong to the plaintiff and the job was to be done for him. July 28, 1923, Hyde wrote the defendants repeating these oral statements. This letter was written on the letterhead of "The A. E. Foss Co." "Frank C. Hyde, Pres." On August 7, 1923, a writ in trustee process in which The Somerville Press Inc. was plaintiff and The A. E. Foss Co., a corporation, was defendant was served upon the present defendants as trustees, attaching the property of The A. E. Foss Co., "whether the same stands in the name The A. E. Foss Co., Frank C. Hyde or however else the same may stand." On the morning of August 7, before the goods were

attached, Hyde told Burlen that he had assigned the property to one Morrison.   August 11 Morrison wrote the defendants notifying them that the property in their hands "in the name of the North Shore Blue Book Inc" had been assigned to him by Hyde on August 1 "in accord with a note [*sic*] of the North Shore Blue Book, Inc. Directory."   On August 15, Morrison wrote the defendants demanding the property and that it be turned over to Frank C. Hyde.   The defendants refused to deliver the property because of the trustee process.

It was found by the judge who heard the case, sitting without a jury, that Hyde was president and treasurer of the plaintiff corporation, holding a majority of its shares; that The A. E. Foss Company was organized by Hyde; that some of its officers were officers of the plaintiff corporation; that Hyde had the entire management and control of the business of the plaintiff; "Whatever was done respecting the corporation or its affairs was done by Hyde or under his direction."   He also found that the directors of the plaintiff knew that Hyde was holding himself out as the owner of the property in the defendants' possession and acquiesced in it, and that, although the plaintiff owned this property, the defendants were deceived by the false statements of Hyde that he was the owner; and that when the attachment was made under the trustee writ "in which the officer was directed to attach the goods held by the defendants Burlen, et al., in the name of Frank C. Hyde, et als." the defendants were "unable to tell whether Hyde or some other party was the true owner of the property."   The judge also stated in his findings, if the evidence in the case and his findings of fact warranted a finding or ruling that the defendants were justified in refusing to deliver the property when demanded, "I find for the defendants.   But I am of opinion that the findings of fact aforesaid and the evidence in the case do not warrant such a finding or ruling" and he found for the plaintiff in the sum of $4,817.

When the plaintiff demanded the goods on August 15, the defendants had the books in their possession under an agreement with Hyde that these books belonged to him, that the work was to be done for him personally.   On August 7, Hyde

informed the defendants that he had assigned the property to Morrison. The assignment presented to the defendants on August 11 purported to have been given by Hyde on August 1 in accordance with a vote of the plaintiff. Morrison testified on this point that in so far as the assignment states that it is "an assignment of the North Shore Blue Book in the name of the North Shore Blue Book, Incorporated, I must be mistaken. . . . I should have said perhaps interests of Frank C. Hyde to be explicit." The defendants answered in the trustee process, alleging the notice of July 28 of Hyde that he was the owner of the books. The plaintiff appeared as claimant in trustee proceedings, which we assume are still pending.

When the trustee writ was served on August 7, the defendants well might have believed that they were holding certain property which belonged either to Hyde or to some other person (not knowing with certainty who was the owner) and which was attached under the trustee writ. At this time the defendants had no information that this property belonged to the plaintiff. Its contract to do the work was made with Hyde as an individual and not with the plaintiff corporation. In *Cornell* v. *Mahoney*, 190 Mass. 265, personal property of the plaintiff was deposited by her with the defendant, a common carrier. The property was attached in trustee process against the plaintiff and the defendant summoned as trustee. After the service of the trustee writ, the plaintiff demanded her property and brought an action of tort for its conversion. It was held that the defendant was bound to keep the goods so that if charged as trustee by reason of their possession he could deliver them to the officer to be taken on execution, and, in the absence of collusion between himself and the attaching creditor, he could not be found guilty of conversion in so doing. See also *Clegg* v. *Boston Storage Warehouse Co.* 149 Mass. 454.

Although the trial judge found that the printed sheets left with the defendants were the property of the plaintiff, it was also found that the defendants were deceived by the false representations of Hyde claiming he was the owner; that the plaintiff acquiesced in this conduct and knew that Hyde

was holding himself out to be the owner; that the defendants, when the attachment was made in the trustee action, were unable to know "whether Hyde or some other party was the true owner of the property." In other words, by the plaintiff's conduct the defendants believed the property to belong to Hyde or to some third party. They made the contract with Hyde to bind the sheets relying on his statements that he was the owner. They were notified of this by letter of Hyde written on the letterhead of The A. E. Foss Co., of which he was president. The defendants also were notified that the goods had been assigned to Morrison. The defendants were then in the position that when the goods were attached they did not know to whom they belonged. The plaintiff itself was responsible for this. The defendants were induced by these transactions to act as they did to their harm, and the plaintiff must be presumed to know the consequences that would follow. The defendants did not know who owned the property in their hands. The plaintiff was estopped and it cannot recover in this action. See *Ladrick* v. *Briggs*, 105 Mass. 508; *Tracy* v. *Lincoln*, 145 Mass. 357; *Boston & Albany Railroad* v. *Reardon*, 226 Mass. 286, 291.

There was some evidence that one of the defendants, before the writ in trustee process was served, when asked by the manager of the plaintiff in the trustee action if he "had any goods there for the North Shore Blue Book or A. E. Foss & Co. . . . [said] 'I told him yes.'" But this is not conclusive, for the judge found that the defendants did not know whether Hyde or some one else owned the property.

The plaintiff's exceptions relate to the testimony of Hyde in stating to the defendants that the work "was . . . [his] own personal property," and to the admission in evidence of the written notice of assignment to Morrison. These statements of Hyde and the notice were admissible on the issue. The making of these statements by Hyde and the assignment to Morrison, deceived the defendants so that they did not know who owned the property; and as Hyde was authorized to act as he did, his statements and acts were admissible.

The defendants acted on these statements and acts and they were justified in so doing. The evidence was admissible.

The defendants' motion for a directed verdict should have been allowed. See Wigmore, Ev. § 1056. The plaintiff's exceptions are overruled. The defendants' exceptions are sustained.

*Judgment for the defendants.*