CHARLES LINNEHAN *vs.* NATHAN MATTHEWS.

Suffolk.   February 1, 1889. — March 2, 1889.

Present: MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Building Contract — Order — Case Stated — Motion to discharge.*

In an action by the payee against the acceptor of an order, payable when the drawer had completed a building under a contract between the acceptor and himself to a certain point, and given in payment of building material, it appeared that the contract was cancelled before that point was reached because of the drawer's inability to perform it, and that the acceptor finished it at a cost greater than the amount that would have been due the drawer had he completed it. *Held,* that the order never became payable, and that the action could not be maintained.

A motion to discharge an agreed statement of facts was overruled, on the grounds that the material facts were not obscure and contradictory, as alleged, and that there was no competent evidence of fraud such as was set up.

CONTRACT against the defendant as acceptor of certain orders drawn by John F. Mead to the order of the plaintiff, and given in payment of building materials furnished and to be furnished by him to Mead, who was erecting a building under a contract, dated March 1, 1882, between the defendant and himself.   The case was submitted to this court on an agreed statement of facts, which was filed on April 18, 1888.   The case came on for argument in January, 1889, when the plaintiff for the first time filed a motion to discharge the agreed facts. . The material facts appear in the opinion.

*L. M. Child,* for the plaintiff.

*F. W. Kittredge & N. Matthews, Jr.,* for the defendant.

FIELD, J.   The declaration is on three orders drawn by one Mead to the order of the plaintiff on the defendant and accepted by him.   The first order is dated May 13, 1882, for $1,000, payable " when a building now being erected by me on Huntington Avenue is plastered according to plans and specifications," etc., and " when I have completed my contract of March 1, 1882, . . . to this point."   The second order is dated May 31, 1882, for $1,500, payable " when the standing finish is up," etc., and " when I have completed my contract . . . to this point."   The

third order is dated July 15, 1882, for $1,000, payable when the building " is plastered according to plans," etc., and " when I have completed my contract . . . to this point."

It is agreed that Mead ceased to work on the building in the middle of September, 1882, and that then the roof was not on, the walls were only partially erected, the fifth floor was not on, and the mason-work not up to the fifth floor, and that "no plastering was done, nor any part of the standing finish up." By the contract, the plastering was to be finished by April 1, 1883, and the building was to be completed by October 1, 1883, and $10,000 was payable when the plastering, stucco-work, and cornices were finished, being the ninth proposed payment, and $10,000 when the standing finish was completed and the doors and windows were put in, being the eleventh proposed payment. It is also agreed, that, " when Mead ceased work upon the building, no payment beyond the fourth payment, mentioned in said agreement of March 1, had become due, and the defendant had advanced under said contract all that was then due." The fourth payment in the agreement was " ten thousand dollars when the fourth floor is on and the mason-work up to said fourth floor completed." It is also agreed, that, " after Mead ceased work upon the building, the cost to complete the same was more than the amount that would have become due to Mead under said contract had he completed the same."

On October 28, 1882, Mead, Nathan Matthews, Jr., and the defendant executed an agreement, whereby Mead conveyed to Nathan Matthews, Jr. his interest in the land and in the building materials on the premises for $3,500, and Mead and the defendant released each other from all liability arising from the contract of March 1, 1882, and thereupon the defendant proceeded to complete the building at his sole expense. It is also agreed, that Mead did no work upon the building after the middle of September, 1882, "having become wholly unable to prosecute the said work and to further complete the said contract of March 1, 1882, except as may be inferred from the instrument of October 28, 1882, hereinafter mentioned, the defendant not admitting that any inference can be drawn therefrom tending to prove Mead's ability to prosecute or complete the said contract." The agreement of October 28, 1882, recites

that Mead "now finds himself wholly unable to continue the prosecution of said building, and to complete the same as in said contract provided." And it is plain that no other inference can be drawn from said agreement. It thus appears that Mead never so far performed his contract that any of the orders became payable, and that the plaintiff cannot maintain an action upon the orders. *Newhall* v. *Clark*, 3 Cush. 376.· *Somers* v. *Thayer*, 115 Mass. 163. *Farquhar* v. *Brown*, 132 Mass. 340. *Proctor* v. *Hartigan*, 143 Mass. 462.

The defendant is not liable, because the building contract was cancelled in consequence of the inability of Mead to perform it, and thereupon the defendant finished the building. *Newhall* v. *Clark*, 3 Cush. 376. *Duffield* v. *Johnston*, 96 N. Y. 369.

It is conceded by the defendant, that, if he had interfered by force, fraud, or collusion to prevent Mead from performing his contract, then he would be liable to the plaintiff in some form of action. *Newhall* v. *Clark*, 3 Cush. 376. No such facts appear in the agreed statement of facts, and no such cause of action is alleged in any count of the declaration; and because this contention is not open to the plaintiff on the agreed facts, he has moved that they be discharged. The first reason given for discharging the agreed statement of facts is, that "the case stated is obscure and contradictory, and requires a finding of what are the facts from the evidence stated." So far as the facts stated are material, we have not found them obscure or contradictory. The second reason is, that "an important question in this case is whether there was collusion between Mead and the defendant to deprive the plaintiff of his rights."

The agreed facts are signed by counsel, and were filed on April 18, 1888, and they raise no question of collusion between Mead and the defendant. The counsel for the plaintiff waited until January, 1889, before he made this motion, the case having been continued from the November session of 1888. From the affidavits submitted, we think that there is no probable ground for believing that the plaintiff's counsel signed the agreed statement of facts in consequence of any fraud practised upon him or his client, or from any mistake as to the meaning of the agreement, and there is no evidence contained in the affidavits tending to show any collusion between Mead

and the defendant; the only evidence is of statements made by Mead, which are inadmissible as evidence. The motion is denied. The entry must be      *Judgment for the defendant.*