ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

---

### HORACE S. HOMER vs. FREDERICK E. SHAW.
### SAME vs. SAME.

Suffolk.   March 23, 1900. — October 17, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Assignment — Contract — Action — Quantum Meruit — Substituted Contract.*

A., who was doing business under the name of the A. Company, made an oral con-
tract with B. to do certain work at a price named.   At the time he began work
he wrote a letter to B., dated several months previously, and signed "A. Com-
pany," in which he offered to do the work in question at the price so agreed
upon, and B. accepted this offer in writing.   A. afterwards made an assignment
to C., signed "A.," of all sums then due or becoming due under the contract with
B., who accepted the assignment.   *Held*, in an action upon such acceptance,
that the jury could find that there were not two contractors for the same work,
but that there was one contractor, A., and he did business under the name of
the A. Company, and sometimes signed one name and sometimes the other; and
that the fact that the letter and the assignment were signed differently would
warrant a finding that all this was known to the defendant.

An action upon the acceptance of an assignment to the plaintiff of all sums due or
to become due to the assignor under a contract between him and the defendant,
providing that "payments be made on engineer's returns monthly," is not pre-
mature because brought on a date between the engineer's return and the end of
the month.

The assignee of all sums due or to become due under a contract which is abandoned
by the assignor cannot recover on a *quantum meruit* for the part performed by

*him; and if after such abandonment a new contract is substituted, by which the assignor is to be paid a salary only for his personal labor, the assignee can recover nothing under that, and such contract is valid as against him.*

TWO ACTIONS OF CONTRACT, the first being upon the acceptance of an assignment, and the second being upon a *quantum meruit.* At the trial of the cases together in the Superior Court, before *Aiken,* J., the jury returned a verdict for the plaintiff in each case; and the defendant alleged exceptions. The facts appear in the opinion.

*J. E. Young,* for the defendant.

*R. S. Bartlett,* for the plaintiff.

LORING, J. The first action is an action on an acceptance by the defendant of an assignment made by one George A. Lancaster of all sums due and to become due to him under a contract between him and the defendant. The assignment sued on was dated June 27, 1896, and was accepted on the same day.

At the trial in the Superior Court, the report of an auditor to whom the case was sent was put in evidence. It appeared from the auditor's report and other evidence introduced at the trial that, in March or February preceding the assignment of June 27, Lancaster was doing business under the name of the Lancaster Construction Company ; that he made an oral agreement with the defendant to erect, rivet, and paint the iron work of section 3 of the subway in the city of Boston, for six dollars a ton. The defendant was a contractor for work on the subway, including among other work the work in question, and had given a bond in the sum of $20,000 to the city of Boston, conditioned on his paying all bills for work and materials incurred in the work covered by his contract. He testified that as Lancaster did not give him a bond, he refused to make a definite contract with Lancaster, but agreed to pay Lancaster at the rate of six dollars a ton, after holding back enough to pay such bills incurred in the work as Lancaster did not pay. This was denied by Lancaster in his testimony. Lancaster began work about June 1, and at that time wrote to the defendant a letter, signed " Lancaster Construction Company," dated March 13, in which he offered to haul, erect, rivet, and paint the iron work in question for six dollars a ton, payments to be made

once a month. The defendant wrote a letter accepting this offer, dated June 1, adding a proviso " that payments be made on engineer's returns monthly."

The defendant testified that he wrote the letter of June 1, " not intending thereby to make a contract but only to oblige Lancaster, who told him he wanted some writing to show to one who was furnishing him money to carry on the work," and that it did not contain all the conditions of the contract under which the work was being done.

Lancaster then applied to the plaintiff for money to carry on the work, and showed him the letters March 13 and June 1. The plaintiff relying on these letters, on or about June 13 advanced to Lancaster $140.05, the amount due for work done by Lancaster that week, and agreed to make further advances that might become necessary to pay the bills for labor on the work for the three following weeks; and under this agreement did advance to Lancaster sums amounting in all to $1,010.83.

On June 27, Lancaster made a written assignment to the plaintiff of all sums " now due or coming due to me from Frederick E. Shaw . . . under a contract entered into by me," to erect and paint the iron work on section 3 of the subway. This was signed " G. A. Lancaster."

On July 18, the plaintiff gave Lancaster a check to be used in making his weekly payments for the labor on the work, but afterwards he stopped payment of it; and on Monday, July 20, Lancaster notified the defendant that it was impossible for him to go on with the iron work on account of his " financial circumstances." There was evidence that it was then agreed between the defendant and Lancaster that Lancaster should go on with the work, that the defendant should pay all Lancaster's debts incurred on the work to date, and should advance all money necessary to pay for labor and materials in completing the work and $25 a week to Lancaster personally; and in pursuance of this agreement the defendant paid $928.82 on liabilities incurred by Lancaster prior to July 20.

This action was brought on July 27. The engineer's return showed that for the month ending July 15 one hundred and fifty tons of steel and iron had been erected and painted, and the amount due therefor at the contract price of six dollars per

ton was $900. The defendant, among other defences, claimed the right to deduct the $928.82, and $60, the amount of a dishonored check of the plaintiff to Lancaster and paid by the defendant at Lancaster's request prior to July 20. In the $928.82 was included a payment for $87.38, paid by the defendant for lumber furnished to Lancaster on the defendant's promising to pay for it made when it was furnished. The auditor in his report allowed the defendant to deduct both these sums from the $900.

The jury found a verdict for the plaintiff in the sum of $905.90, which evidently is arrived at by deducting from the $900 the two items of $60 and $87.38, and adding interest to the date when the verdict was rendered.

1. The defendant's first exception is one to a refusal to direct a verdict for the defendant. In support of this exception the defendant contends (1) that the declaration counts on an assignment of money due under a contract between Lancaster and the defendant, and that the contract on which the plaintiff relies is a contract between the Lancaster Construction Company and the defendant; and (2) that the contract declared on must, as matter of law, mean the oral contract testified to by the defendant; that the only contract upon which there was testimony was made between the defendant and Lancaster as distinguished from the Lancaster Construction Company, for Lancaster testified that all oral agreements were merged in the written contract contained in the letters of March 13 and June 1, which is a contract between the Lancaster Construction Company and the defendant; and under that contract the $988.82 can be deducted by the defendant; and (3) finally that there was no evidence that the defendant knew that Lancaster did business under the name of the Lancaster Construction Company. It is plain that there was evidence on which the jury could find that there were not two contractors for this same work, one being Lancaster and the other the Lancaster Construction Company, but that there was one contractor, Lancaster, and he did business under the name of the Lancaster Construction Company, and sometimes signed one name and sometimes the other; and further, the fact that the letter was signed by the Lancaster Construction Company, and the assign-

ment by G. A. Lancaster, is evidence which would warrant a finding that all this was known to the defendant.

2. The defendant's next exception is one to a refusal of the court to rule that the action was prematurely brought. This is based on the argument that since by the letter of June 1 the payments were to be based " on engineer's returns," and were to be made "monthly," " the time between receiving the engineer's return and the end of the month was a period of credit in which no suit could be brought." There is nothing in this.

3. In the second action the plaintiff declared on a *quantum meruit* for the work done between July 15, the end of the month in question in the first action, and July 20, the date of Lancaster's notice to the defendant that he should not continue the work.

The defendant asked for a ruling that Lancaster's assignee could not sue upon a *quantum meruit*, and on that ground that the court direct a verdict to be entered for the defendant. We are of opinion that this ruling should have been given.

When, on July 20, Lancaster notified the defendant that he would " have to give the job up," the plaintiff, as his assignee, had no right to recover for the work done between July 15 and July 20 ; Lancaster could not recover on the contract, for he failed to perform the work which he had agreed to perform during the month ending August 15 ; nor on a *quantum meruit*, for one who has voluntarily failed to perform his contract cannot recover on a *quantum meruit* for the part performed by him. *Faxon* v. *Mansfield*, 2 Mass. 147. *Stark* v. *Parker*, 2 Pick. 267. *Olmstead* v. *Beale*, 19 Pick. 528. *Veazie* v. *Hosmer*, 11 Gray, 396. *Fitzgerald* v. *Allen*, 128 Mass. 232, 233, 234.

The plaintiff claims that the contract was rescinded ; but the only evidence of rescission was by a new contract for the same work, by which the defendant was to pay all Lancaster's outstanding bills for past work and do the rest of the work himself, paying Lancaster for supervising the work $25 a week and the saving, if any, which he might make by finishing the work at less than the contract price of $6 a ton, including in the expense of finishing the work his liability for the claims on which these suits are founded. That agreement of rescission by substitution of a new contract does not entitle the plaintiff to sue

for these advances; by its terms nothing was to be paid Lancaster for his work under the contract, and if the plaintiff claims under that he is bound by its terms.

The cases relied on by the plaintiff are cases where the contract has been terminated without fault on the part of the plaintiff; *Fitzgerald* v. *Allen*, 128 Mass. 232; *Gilbert & Barker Manuf. Co.* v. *Butler*, 146 Mass. 82; or where the plaintiff has a right to abandon the contract, as in *Simmons* v. *Lawrence Duck Co.* 133 Mass. 298.

As the plaintiff before this substituted contract for completing the work was made had no claim against the defendant, the latter was at liberty to make that contract, and the making of it was not a fraud on the rights of the plaintiff and is valid as against him. The entry must be,

> *Exceptions overruled* in the first case.
> *Exceptions sustained* in the second case.