HORACE S. HOMER vs. FREDERICK E. SHAW.

Suffolk.   March 15, 1912. — May 24, 1912.

Present: RUGG, C. J., BRALEY, SHELDON, & DeCOURCY, JJ.

*Contract,* Rescission, Performance and breach.   *Assignment.*

In an action of contract against a building contractor the plaintiff alleged that he
was the assignee of a sum of money which the defendant owed a subcontractor.
At the trial of the action before a judge without a jury there was evidence tend-
ing to show that the subcontractor had made a contract to do certain con-
struction work for the defendant and that the plaintiff lent money to use in
performing the contract to the subcontractor, who assigned to the plaintiff as se-
curity all sums due and to become due to him under the contract, and that the
assignment was "accepted" by the defendant in writing; that thereafter because
of lack of funds the subcontractor informed the defendant that he would have
to "give the job up," and the defendant agreed with him that he should go
on with the work, that the defendant should pay his debts already incurred
for labor and material, should advance what money was necessary for the
remainder of the work and should pay him $25 per week for his services in
superintending the work and for the use of his tools.   The work which originally
the subcontractor had agreed to do then was completed without any ostensible
change in the relations of the defendant and the subcontractor.   The action
was for an amount alleged to have become due to the subcontractor under the
original contract after the date of the new arrangement between the de-
fendant and the subcontractor.   The judge found for the defendant. *Held,*
that the facts warranted a finding that the original contract had been rescinded
by the new arrangement between the defendant and the subcontractor, and
that therefore the judge's finding was warranted.

CONTRACT by the assignee of the rights of one George A. Lan-
caster under a contract with the defendant under which he was to
be paid for certain excavating and mason work and the setting
up and riveting of the iron work of a section of the Tremont Street
subway in Boston, the defendant being the general contractor
for the construction of that section for the transit commissioners.
Writ dated August 27, 1896.

The case previously was before this court and is the second case
referred to in 177 Mass. 1, 5, where it was decided that the plain-
tiff could not maintain an action upon a *quantum meruit,* because
Lancaster voluntarily had broken his contract with the defendant.
After that decision the plaintiff was allowed to file a substituted

declaration in which he alleged that Lancaster's contract with the defendant was fully performed.

The case then was heard by *Raymond*, J., without a jury. There was evidence tending to show the following facts: Lancaster began performance of his contract with the defendant soon after June 1, 1896. On or about June 13, being in need of funds to pay his men and for other expenses of carrying out his contract, he applied to the plaintiff, showing him certain letters which had passed between him and the defendant regarding the terms of their agreement and stating that the letters contained the terms of his contract with the defendant. Relying on the terms of the contract as set forth in those letters, the plaintiff advanced to Lancaster the sum of $140.05 and agreed to make the further advances that might become necessary for the payment of labor bills for the three following weeks, in consideration of which Lancaster agreed to divide the profits accruing to him under the contract equally with the plaintiff. Under the terms of this agreement the plaintiff advanced to Lancaster in weekly payments sums amounting in all, including the first payment, to $1,010.83, which amount was received by Lancaster and applied by him to the payment of bills for labor incurred in the performance of his contract with the defendant. On or about June 27, 1896, in order to secure the plaintiff for his advances Lancaster executed and delivered to him the assignment of the amounts due and coming due to him under his contract with the defendant. This assignment was sent to the defendant for acceptance and was accepted by him in writing. On July 18 the plaintiff gave to Lancaster a check to be used in making his weekly payment for labor under his contract and afterwards stopped payment of it. Thereupon on July 20 Lancaster wrote to the defendant: "Owing to my peculiar financial circumstances it will be impossible for me to go on with the iron work on the subway and shall have to give the job up." On the same day the defendant and Lancaster met and it was agreed between them, at the defendant's request, that Lancaster should go on with the work and that the defendant should pay his debts for labor and material already incurred in carrying out the contract, and should advance the money necessary in the future to pay for labor and material used in completing the work, and should pay the further sum of $25 per week to

Lancaster personally. The defendant testified that the former contract was entirely rescinded and that he employed Lancaster to complete the work at a weekly salary of $25 per week for his services in superintending the work and for the use of his tools, and that the defendant thereafter assumed the entire responsibility of the work, including the payment of the men and the cost of materials without further accountability to Lancaster, except that he promised Lancaster that if he completed the work to his satisfaction and got rid of the plaintiff's claim and any other claims and suits, he would allow Lancaster the difference between what it might cost the defendant to complete the job, including all costs and expenses, and the contract price of $6 per ton. An auditor, Charles M. Reed, Esquire, to whom the case was referred before it was before this court the first time, and whose report was in evidence at the second trial, found "that this new arrangement was in effect a rescission of the original contract and the substitution of a new and radically different one for it, and that the rights of the plaintiff under his assignment did not extend to the sums payable to Lancaster after this date."

The plaintiff asked for the following rulings, which were refused.

"1. The letter of July 20, 1896, is not equivalent to an abandonment of the contract, and did not justify the defendant in rescinding the contract to the injury of the plaintiff.

"2. There is no evidence to show such abandonment of the contract by Lancaster as will deprive the plaintiff of his rights under the assignment."

"7. The arrangement which it is claimed was entered into on July 20, 1896, between the defendant and said Lancaster was not an abandonment or cancellation of the existing contract between the parties, but only a change in the terms of payment, and, since Lancaster had fully performed the contract up to that day, the defendant, having accepted the assignment to the plaintiff, could not, by entering into a different arrangement with Lancaster, deprive the plaintiff of his rights under said assignment, or by payments to Lancaster or his creditors reduce the amounts coming due for work done.

"8. Lancaster owed no duty to the defendant under his contract with the defendant to pay his, Lancaster's employees, and his failure so to do, and still less his announcement of his inability

so to do, in the absence of an actual cessation of the work, affords no legal justification to the defendant for treating the contract as abandoned or for rescinding the same.

"9. The announcement by Lancaster on July 20, 1896, that he would 'have to give the job up' was not a breach of any duty which he owed to the defendant under his contract, and unless there was an actual breach of the contract, the defendant had no legal right to rescind the same without the consent of the plaintiff."

The judge found for the defendant; and the plaintiff alleged exceptions.

*C. F. Lovejoy,* for the plaintiff.

*J. E. Young,* for the defendant, was not called upon.

BRALEY, J. The defendant's liability upon acceptance of the assignment depended upon the assignor's performance of his contract to transport, erect and paint the steel work required for a section of a subway which the defendant was building in accordance with the plans and specifications of the transit commissioners. If not fully performed the entire contract price although payable in monthly instalments never became due, or if before completion the assignor by reason of his inability to go on, voluntarily abandoned the work, he could not recover for work and labor already performed and furnished. *Homer* v. *Shaw,* 177 Mass. 1. *Burke* v. *Coyne,* 188 Mass. 401, 404. *Buttrick Lumber Co.* v. *Collins,* 202 Mass. 413, 420. After the assignor entered upon the performance of the contract he informed the defendant, that owing to the failure of the plaintiff to advance money, which apparently he had agreed to furnish, he would be unable to complete the work as his workmen had not been paid, and if their wages remained in arrears they would leave his employment. The evidence, if no further action had been taken by the parties, and performance of the work had ceased, would have warranted a finding, that, the assignor having repudiated or abandoned his contract before the first instalment of the contract price became payable, the defendant would not have been indebted to the plaintiff. *Homer* v. *Shaw,* 177 Mass. 1. *Bowen* v. *Kimbell,* 203 Mass. 364, 370, 371. *Barrie* v. *Quinby,* 206 Mass. 259, 267. But without any ostensible change the assignor remained in charge of the work until completion, and the plaintiff contends under the substituted declaration, that the

money thereafter received should be considered as earned under the original contract.   The assignor needed immediate financial assistance, and if the defendant might have advanced the money which the evidence shows he furnished to enable him to pay his employees, yet if he had done so the plaintiff's assignment would have been given priority over the loan.   *Buttrick Lumber Co.* v. *Collins*, 202 Mass. 413.   The parties while they could not modify to his prejudice the terms of the contract assigned without the plaintiff's consent, or by a secret fraudulent arrangement deprive him of the benefit of the assignment, were not precluded from entering into a new agreement if performance by the assignor had become impossible from unforseen circumstances.   *Eaton* v. *Mellus*, 7 Gray, 566, 572.   *Linnehan* v. *Matthews*, 149 Mass. 29.   It consequently was a question of fact upon all the evidence for the presiding judge before whom the case was tried without a jury, to decide, whether upon facing the exigencies of changed conditions the parties mutually agreed to a cancellation, and thereupon in good faith an independent contract was substituted, by the terms of which the defendant undertook to furnish sufficient funds to pay the workmen the wages then due, and their future wages as they accrued, while the assignor was to receive a weekly salary for his personal services of supervision.   The refusal to comply with the plaintiff's requests for findings, and the general finding for the defendant manifestly show his conclusion to have been, that the first contract was treated as having been rescinded, and the plaintiff had no enforceable claim against the defendant under the assignment.   *Earnshaw* v. *Whittemore*, 194 Mass. 187, 192. *Glidden* v. *Massachusetts Hospital Life Ins. Co.* 187 Mass. 538, 541.   The plaintiff's requests for rulings in so far as they were not given were rightly refused, and the exceptions must be overruled.

*So ordered.*