CYRUS MARK & others *vs.* STUART-HOWLAND COMPANY.

STUART-HOWLAND COMPANY *vs.* CYRUS MARK &_others.

STUART-HOWLAND COMPANY, petitioner.

Suffolk.    October 16, 1916. — January 24, 1917.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Pleading, Civil,* Answer. *Contract,* Rescission, In writing, Agreement as to meaning of doubtful clause. *Practice, Civil,* Exceptions, Judge's charge, Cross action. *Damages,* Recoupment. *Election. Contract,* Performance and breach. *Evidence,* Opinion: experts.

In an action of contract the defence, that the contract sued upon was rescinded by the mutual abandonment of it by the parties, is an affirmative defence in

confession and avoidance, which must be alleged in the answer and cannot be proved under a general denial.

At the trial of an action for breach of a contract in writing to receive and pay for certain goods at a certain price alleged to have been the contract price, it is reversible error for the presiding judge to suggest in his charge to the jury a ground of exoneration for a breach of contract which was not open to the defendant upon the pleadings and had not been relied upon as a defence at the trial, and to permit the jury to surmise, in the absence of any evidence on the subject, whether this might not be a good way to dispose of the case.

In an action for a breach of a contract in writing by refusing to pay the plaintiff the alleged contract price for certain goods, it appeared that before the defendant ordered the goods the plaintiff in the exercise of a right given him by the contract had written to the defendant withdrawing outstanding prices and submitting a higher schedule of prices for goods shipped after a certain date two months ahead, that the defendant ordered the goods in question fifteen days after the receipt of this letter, and there was evidence tending to show that the order was not for goods to be delivered immediately nor for goods to be delivered before the date named for the change in prices. The plaintiff contended and insisted that the goods were ordered at the new and higher price, while the defendant contended and insisted that the goods were ordered at the lower price in force when the order was given and that he was justified in refusing to accept the goods at the higher price. The presiding judge, subject to the plaintiff's exception, instructed the jury that, if, while the parties were considering their disagreement as to the meaning and interpretation of the contract and their rights and obligations under it, "they both got sick of the bargain and there was a mutual abandonment of the contract, then neither is from that time further bound by it. . . . then one cannot be said to have violated the contract more than the other." There was no evidence to which this instruction was applicable, the evidence showing that the defendant's order was given in good faith and that both parties in good faith continued to assert contrary rights arising from a diversity of opinion as to the construction of the contract. *Held,* that the plaintiff's exception to the instruction given by the judge must be sustained, because it could not be regarded as harmless error to permit the jury to speculate as to a mutual abandonment of the contract when there was no evidence to warrant a finding that the contract had been abandoned.

Where the defendant in an action of contract sets up in his answer a claim in recoupment of damages and also brings a cross action founded on the same claim, the correct practice is for the presiding judge to require him to elect at the close of the evidence whether he will proceed on the answer in recoupment or on the cross action, contrary to an earlier practice which seems to have been to permit him to rely on both.

A presiding judge in an action of contract hardly would have the right, against the objection of a defendant who had set up in his answer a claim in recoupment and also had brought a cross action, to order him to proceed upon his cross action and to waive his answer in recoupment.

In an action for the alleged breach of a contract in writing, where the contract between the plaintiff and the defendant contained two parts, one providing that the defendant should have the exclusive agency for two years for one kind of goods manufactured by the plaintiff and the other providing for sales of goods to be made by the plaintiff to the defendant from time to time at prices

to be fixed by agreement of the parties but with at least a five per cent preference to the defendant below the prices quoted by the "associated manufacturers," it was *held*, that, so far as successive sales by the plaintiff to the defendant were concerned, they were severable and each contract of sale was to be considered by itself, so that a refusal by the plaintiff to accept a certain order of the defendant for goods to be shipped at a certain price would not necessarily prevent the plaintiff from recovering from the defendant the price of other goods previously sold and delivered under the contract.

At the trial of an action upon a contract in writing, the meaning of the terms of which in the light of all the circumstances was in dispute, it was *held* that it was right for the presiding judge to refuse to rule at the request of the defendant, that the plaintiff, who had refused to accept an order from the defendant for a shipment of goods at a certain price, had not sustained the burden of showing that before a certain day he had performed his part of the contract; because it might have been found that under the circumstances shown the order of the defendant was one that the plaintiff was not bound to accept, and that whether this was so was a question for the jury.

At the trial of an action upon a contract in writing providing for sales of certain goods by the plaintiff to the defendant at prices to be fixed by the parties and "to be raised or lowered according to market conditions," there is no error in an instruction of the presiding judge, that the plaintiff was not obliged to accept a certain order by the defendant for goods at a certain price if the defendant was thereby "attempting to make the price at that time for the whole of the following year" nor unless the goods were for immediate use and sale.

In the action above described it was *held* to have been right for the presiding judge to exclude the testimony of an expert offered by the defendant to the effect that the defendant's order was a reasonable one; because the reasonableness of the. order, so far as it did not depend upon rules of law, was exclusively for the determination of the jury.

Where the meaning of a contract in writing for the sale of goods was obscure upon the question whether the buyer should be allowed a five per cent discount on. a purchase of goods for which he did not pay on or before the tenth day of the, month after the date of shipment, and the correct interpretation of the language of the contract on this point was a matter upon which intelligent men well might disagree, the sellers wrote to the buyer, after stating their own view, "However, we do not wish to appear critical in this matter and will accept your. interpretation of the contract." *Held*, that this amounted to an agreement as to the meaning of a doubtful clause in a contract between the parties for the purpose of avoiding further controversy, by which both parties were bound, whatever the real meaning of the words might be.

CROSS ACTIONS OF CONTRACT, which are described in the opinion, the first brought by Cyrus Mark, Clayton Mark and Anson Mark, copartners doing business in Chicago in the State of Illinois under the name Mark Manufacturing Company, against the Stuart-Howland Company, a corporation organized under the laws of the State of Maine and having its usual place of business in Boston; and the second action by the defendant in the first action

against the plaintiffs in that action.    Writs dated respectively May 10, 1909, and January 22, 1912.

In the Superior Court the cases were tried together before *White,* J.    The material evidence is described in the opinion.

The contract on which both actions were brought was as follows:

"Memorandum of agreement made and entered into this 25th day of May, 1908, by and between the Mark Mfg. Co., a copartnership (composed of Clayton Mark, Cyrus Mark and Anson Mark,) having its regular place of business in Chicago, party of the first part, and the Stuart-Howland Co., a corporation duly organized under the laws of the state of Maine and having its regular place of business in Boston party of the second part

"Witnesseth:

"That for and in consideration of one dollar ($1.00) by each to the other paid, receipt for which is hereby acknowledged, and the covenants and conditions herein contained, the parties hereto agree as follows:

"The party of the first part appoints the party of the second part its exclusive selling agent for its entire line of rigid iron conduit for the six New England States and agrees to refer to it all orders and inquiries emanating from that territory.

"The party of the first part quotes the party of the second part a discount of 50, 4/10s & 5 from its regular published list in any quantity in free delivery territory with the understanding that price shall be raised or lowered according to market conditions but that the party of the first part will at all times during the life of this contract allow the party of the second part a 5% better price than that quoted by the so-called 'Associated Manufacturers.'

"The party of the first part agrees to ship as promptly as possible the orders of the party of the second part, to furnish such printed matter bearing the imprint of the party of the second part as may be mutually deemed desirable and to aid the said party of the second part in every reasonable way in marketing the goods in the above mentioned territory.

"The party of the second part agrees to push the sale of the above mentioned material manufactured by the party of the first part in preference to all others and to pay all bills on or before the 10th of the month succeeding date of shipment less 5% and should

any payments be delayed beyond that date, to pay interest there-after at the rate of 6% per annum.

"This agreement to remain in force for two years from this date and thereafter until cancelled by 60 days' written notice of either party. It is, however, hereby understood and agreed that the party of the second part shall have the privilege of cancellation by giving the party of the first part notice in writing at any time during the life of this contract.

"In witness whereof we have hereunto set our hands and seals the day and year first above written.

| | |
|---|---|
| Sadie A. Phelan | Mark Manufacturing Co. |
| Witness. | Copartnership. |
| Sadie A. Phelan | D. L. Markle |
| Witness. | Stuart-Howland Co. |
| | By G. M. Stuart." |

The defendant in the first case, among other requests, asked the judge to make the following rulings, which are mentioned in the opinion:

"10. There is evidence that the Mark Company committed a breach of the contract by which the parties were bound in refusing to accept the order of December 12, wherefrom the jury may find that the Mark Company lost or forfeited its right to recover for the invoices of January 10 and February 10."

"25. The Mark Company have not sustained the burden of proof that on or before Dec. 15, 1908, they had performed all conditions and things to be performed by them to entitle them to call upon the defendant for performance of its part."

"32. The voluntary refusal of the Mark Company to accept the Stuart Company's order of December 12 constitutes a breach of contract going to the essence thereof and precludes recovery by the Mark Company either upon the contract or upon a *quantum meruit.*"

The judge refused to make these rulings. A portion of his charge to which the defendant excepted is quoted in the opinion. The judge ordered a verdict for the plaintiffs in the first case in the sum of $11,146.77, and ordered a verdict for the defendants in the second case. Both parties alleged exceptions.

The judge allowed the bill of exceptions presented by the defendant in the first case after striking out certain portions of

it. The defendant thereupon filed in this court a petition for the establishment of the truth of the portions of its bill of exceptions which were disallowed by the judge.

The plaintiffs' exceptions related to a single point. The judge in ordering the jury to return a verdict for the plaintiffs ordered it in an amount which was computed by deducting five per cent from the price to be paid by the defendant for shipments in June, 1908, although they were not paid for by the defendant on or before July 10, 1908. This exception is explained in the opinion.

*J. B. Studley,* (*J. J. Kaplan* with him,) for Cyrus Mark and others.

*H. Parker,* (*J. M. Hoy* with him,) for the Stuart-Howland Company.

RUGG, C. J. The action of Mark and others, who hereafter will be called the plaintiffs, was brought first. The declaration is in two counts, the first to recover damages for breach of a written contract dated May 25, 1908, and the second upon an account for goods sold and delivered to the Stuart-Howland Company, who will hereafter be called the defendant. The defendant answered, pleading first, a general denial, and second, in recoupment, that, although the defendant had complied with the terms of the contract of May 25, yet the plaintiffs on December 12, 1908, had violated the terms of that contract by refusing to fill an order given by it to the plaintiffs, and thereafter had refused to carry out the contract and had repudiated it to the great loss of the defendant. The second is a cross action brought by the defendant against the plaintiffs. The declaration in this action contains one count for damages arising from the general breach of the contract of May 25, 1908, one for loss of profits from December 12, 1908, to the end of the contract term, and a third for damages for delays in shipments of its orders given to the plaintiffs under the contract. The cases were tried together.

The contract provided in substance for the appointment of the defendant as the exclusive agent for the New England States for the plaintiffs' entire line of rigid iron conduit for a period of two years, with a privilege of written cancellation by either party on sixty days' notice, and an absolute privilege of cancellation on the part of the defendant by giving written notice. The plaintiffs quoted "a discount of 50, 4/10s & 5" from its regular published

list, the price, however, to be raised or lowered according to market conditions, but the defendant always to be allowed a five per cent preference below the price quoted by the "Associated Manufacturers." The controversy centres about an order given by the defendant to the plaintiffs on December 12, 1908, for twenty-five carloads of conduit, to be shipped to Boston unless otherwise directed, "Prices not to be higher than last shipment." There was evidence tending to show that the order was not intended for immediate delivery nor delivery before January 1, 1909. On October 27, 1908, the plaintiffs had written the defendant withdrawing all outstanding prices on conduit and submitting a schedule of higher prices for goods to be shipped after December 31, 1908. The chief issue between the parties was whether upon all the evidence the plaintiffs were bound to accept the defendant's order of December 12 at the lower price, or whether they were justified in refusing to accept it unless at the higher price. There was much correspondence over this order and there were efforts at compromise of the differences. These were without avail and in May, 1909, the plaintiffs brought their action.

The plaintiffs asserted at the outset, and continued constant in the position, that they were not obliged to accept the order except at the higher price. The defendant, on the other hand, persistently maintained its position that the plaintiffs were obliged to accept the order at the lower price. There is nothing in the auditor's report, in the reported testimony, in the correspondence as printed in either brief, nor in the conduct of the parties, to indicate that either ever receded from the initial position taken. On the contrary, although there were offers of concession, the evidence seems plain that each continued to assert the soundness of the original contention put forward.

Under these circumstances the jury were instructed, subject to the defendant's exception, that if, while the parties were considering their disagreement as to the meaning and interpretation of the contract and the rights and obligations arising from it, "they both got sick of the bargain and there was a mutual abandonment of the contract, then neither is from that time further bound by it . . . . then one cannot be said to have violated the contract more than the other."

As an abstract proposition of law this is correct. There are two

objections to giving it as an instruction. The first is that abandonment of the contract had not been pleaded by either party. A general denial puts in issue only those facts which the plaintiff must aver and prove in order to establish a *prima facie* case. *Friedenwald Co.* v. *Warren,* 195 Mass. 432, 434. *Amsinck* v. *American Ins. Co.* 129 Mass. 185, 188. Abandonment of a contract as a defence is by way of confession and avoidance and not a direct denial of any element essential to the proof of the plaintiffs' main case. Where the defence rests on a rescission or mutual abandonment of a contract, the issue is whether the contract has ceased to have legal existence or has been terminated by reason of events occurring subsequent to the inception of the contract. It is a distinct and substantive ground of defence which "must be alleged in the answer according to the provisions of the practice act, if a defendant seeks to avail himself of it in order to defeat a recovery on a contract." *Fogg* v. *Griffin,* 2 Allen, 1, 8. See *Parker* v. *Lowell,* 11 Gray, 353, 358; *Pike* v. *Witt,* 104 Mass. 595, 598; *Wheaton* v. *Nelson,* 11 Gray, 15; *Grinnell* v. *Spink,* 128 Mass. 25; *Hight* v. *Bacon,* 126 Mass. 10.

It is reversible error for the judge in his charge, for the first time so far as appears, to suggest a ground of exoneration for breach of contract, which was not open under the pleadings, as to which the course of the trial does not seem at all to have been directed, and to permit the jury to surmise, in the absence of evidence, whether this might not be a good way to dispose of the case. *Plummer* v. *Boston Elevated Railway,* 198 Mass. 499, 516.

The second objection to the instruction is that there was no evidence to which it was applicable. The plaintiffs have argued that the defendant must have known that it had no right to demand under the contract the acceptance and fulfilment of its order of December 12, and expected that the plaintiffs would refuse it, and that, by insisting upon the filling of that order, it abandoned the contract. There is nothing to indicate that the trial proceeded upon this basis or that the defendant did not give its order of December 12 in good faith. A contract may be abandoned by conduct as well as by words. There is no basis for contending that an abandonment has arisen when both parties continue in good faith to assert contrary rights arising from a diversity of opinion as to the construction of the contract. It

cannot be said to have been harmless error to permit the jury to speculate as to an abandonment when there was no evidence to warrant a finding that the contract had been abandoned. *Kerr* v. *Shurtleff*, 218 Mass. 167, 171.

It is necessary to consider questions which may arise on a new trial. Where a defendant pleads in recoupment and also brings a cross action for the same matters, it is the correct practice for the judge to require him to elect at the close of the evidence whether he will proceed on the answer in recoupment or on the cross action, *Cox* v. *Wiley*, 183 Mass. 410, 413, *Hebert* v. *Dewey*, 191 Mass. 403, 407, although the earlier practice seems to have been to permit him to rely on both. *Cook* v. *Castner*, 9 Cush. 266. *Star Glass Co.* v. *Morey*, 108 Mass. 570. Against the exception of the defendant the court hardly would have the right to direct that he should proceed upon the cross action rather than upon the answer in recoupment.

There was no error in the denial of the defendant's requests 10 and 32, to the effect that, if the refusal by the plaintiffs to accept the defendant's order of December 12, 1908, was a breach of the contract between the parties, then the plaintiffs could not recover for the goods sold and delivered. It is a general rule that, where one breaks a contract to be performed for an entire price, he cannot recover on the contract, because he has not performed it, nor on a *quantum meruit*, because his voluntary failure to complete his agreement prevents recovery, save in restricted instances where there has been an honest intention to go by the contract. *Homer* v. *Shaw*, 177 Mass. 1; *S. C.* 212 Mass. 113. A wilful default in the performance of a stipulation not going to the essence of the whole contract, bars recovery. *Sipley* v. *Stickney*, 190 Mass. 43. *Douglas* v. *Lowell*, 194 Mass. 268, 273. *Bowen* v. *Kimbell*, 203 Mass. 364, 371. *Hennessey* v. *Preston*, 219 Mass. 61. But this principle is not applicable to the facts here disclosed. The instant contract has a double aspect; one was exclusive agency by the defendant for two years for one kind of goods manufactured by the plaintiffs; the other was sales of goods from time to time by the plaintiffs to the defendant at prices to be fixed by agreement of the parties, but in any event with at least a five per cent preference over other manufacturers. So far as the successive sales are concerned, they are severable and each is a contract

of sale by itself. *Young & Conant Manuf. Co.* v. *Wakefield,* 121 Mass. 91. *West End Manuf. Co.* v. *Warren Co.* 198 Mass. 320, 326. *Badger* v. *Titcomb,* 15 Pick. 409. *Raphael* v. *Reinstein,* 154 Mass. 178. *Bowker* v. *Hoyt,* 18 Pick. 555. *Barlow Manuf. Co.* v. *Stone,* 200 Mass. 158. *Knight* v. *New England Worsted Co.* 2 Cush. 271, 290. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 212 Mass. 257. Breach of the agency aspect of the contract arising from failure to honor orders for goods sent by the defendant to the plaintiffs in accordance with the contract would not alone prevent recovery by the plaintiffs for goods already sold and delivered.

The defendant's twenty-fifth request for an instruction, to the effect that the plaintiffs had not sustained the burden of showing that before December 15, 1908, they had performed their part of the contract, was refused rightly. Whether they had performed their part of the contract depended upon the further question whether they were bound to accept the defendant's order of December 12. The decision of that question required the determination of the fact whether, rightly interpreted in the light of all the circumstances, that order was given in compliance with the prices and other terms which the plaintiffs justly demanded. It might have been found that the order was not at the prices quoted, was unreasonable in quantity, and in other respects was not upon terms which the plaintiffs were required to accept. These were questions for the jury.

There was no error in the instruction that the plaintiffs were not required to accept the defendant's order of December 12, 1908, if it was thereby "attempting to make the price at that time for the whole of the following year," nor unless the goods ordered were for immediate use and sale. Under the contract the price was to be raised or lowered with market conditions. On October 27, the plaintiffs notified the defendant in substance that outstanding prices were cancelled except that orders to be "shipped prior to December 31st" would be accepted at former price, but that an advance price would prevail "For material to be shipped beyond December 31st." There is nothing in the letters of December 2 or in the subsequent correspondence which modified or enlarged the plaintiffs' obligation beyond the limits fixed on October 27.

The evidence of the expert, to the effect that the defendant's

order of December 12 was reasonable, rightly was excluded. So far as that question did not depend upon correct rules of law, it was purely for the determination of the jury, as to which expert testimony could afford no real help. *Whalen* v. *Rosnosky*, 195 Mass. 545, 547.

The plaintiffs' exceptions raise a question as to the interpretation of these clauses of the contract: "The party of the first part quotes the party of the second part a discount of 50, 4/10s & 5 from its regular published list . . . with the understanding that price shall be raised or lowered according to market conditions but that the party of the first part will at all times during the life of this contract allow the party of the second part a 5% better price than that quoted by the so called 'Associated Manufacturers.' . . . The party of the second part agrees . . . to pay all bills on or before the 10th of the month succeeding date of shipment less 5% and should any payments be delayed beyond that date, to pay interest thereon at the rate of 6% per annum." These two clauses of the contract seem to us to mean that the prices shown on all the bills to be rendered by the plaintiffs to the defendant should at all times be at least five per cent lower than the prices quoted by the "Associated Manufacturers," and that, in addition to the discount thus given on the face of the bills, there should be a further five per cent deducted for cash payments made on or before the tenth of the month succeeding the date of shipment, but that this last deduction was to be allowed only in case payments in cash were so made. According to the terms of the contract the defendant would not be entitled to this final discount in the event of a failure to make a cash payment. But the contract is not expressed with clearness. If the parties had intended that the contract should mean what we interpret it to mean, it would have been simple to have added at the end of the last clause quoted, the words "on the face of the bill" or some similar phrase, or otherwise have expressed their intent by unequivocal words. The contract as written is one about the significance of which intelligent men might disagree. These parties did disagree on that point. The defendant did not pay for the June shipments on July 10 and there was correspondence touching the meaning of this clause in the contract. The defendant contended that it was entitled to this additional

five per cent discount even though it did not pay the bill on the tenth of the succeeding month, while the plaintiffs took the opposite position. Finally the plaintiffs wrote the defendant, after setting out their views, "However, we do not wish to appear critical in this matter and will accept your interpretation of the contract." This amounted to an agreement between the parties as to the meaning of a doubtful clause in a contract, for the purpose of avoiding further controversy by which both are bound, no matter what its real meaning may be thought to be. The case presented is quite different from a written contract plain on its face, which cannot be modified by custom or conduct, and of which *Menage* v. *Rosenthal,* 175 Mass. 358, 361, and *O'Brien* v. *Peck,* 198 Mass. 50, 56, are illustrations.

Since the defendant's exceptions with the alterations made and allowed by the judge under R. L. c. 173, § 110, *O'Connell, petitioner,* 174 Mass. 253, must be sustained, its petition for the establishment of exceptions, which relates to matters not likely to arise on a new trial, need not be considered and is denied.

> In action of Mark & others v. Stuart-Howland Company:
>> *Defendant's exceptions sustained.*
>> *Plaintiffs' exceptions overruled.*
>> *Defendant's petition to establish exceptions denied.*
> In action of Stuart-Howland Company v. Mark & others :
>> *Plaintiff's exceptions sustained.*