Wilson, J.
This is an action of contract brought to recover unpaid salary balances for the years 1926 to 1933, inclusive.
The declaration as finally amended contained eight counts. Count 8 was a count upon an account annexed, which account was for unpaid balances of salaries for said years.
The amended answer was a general denial, payment, waiver, agreement that payment was to be made when deemed expedient by the board of directors, failure of performance by the plaintiff, and the statute of limitations as to items 1 and 2 of count 8.
The trial judge found for the plaintiff on count 8 in the sum of $2284.35, with interest from May 30, 1934, to December 11, 1934.
The trial judge filed a detailed written decision from which it appears that the plaintiff was formerly, during the years 1926 to 1933, inclusive, treasurer and director of the defendant corporation. Prior to the organization of the defendant corporation in April of 1926, the plaintiff and one Agersea had been partners. That during the period covered by this action the defendant and Agersea each held seven hundred and fifty shares of stock in the defendant corporation, and one Davis held one share and was clerk and attorney of the corporation. The records were kept and prepared by Davis and on the whole were prepared with thoroughness and skill. Agersea and Collamore treat *290 ed their relationship as one of partners and considered the corporation as a two-man corporation. For several years the salaries of Agersea, president, and Collamore, treasurer, were formally voted by the corporation. These votes provided for an annual salary and also provided for a weekly drawing account. The drawing account for the fifty-two weeks was always less than the amount voted for annual salary and the votes, which established salary for the years 1926 to 1930, inclusive, provided that the balance should “be paid from time to time as the board of directors shall deem expedient.” At the end of each year up to and including 1932, Agersea and Collamore met with their auditor, talked over the matter of salaries in the light of the yearly statement for the previous year, and finally determined the salary for the year independent of the formal vote of the directors during the year. The auditor of the corporation set up the salary for each prior year on the authorization of said officers, rather than the record books of the corporation.
The legal effect of this procedure as to salaries is that the directors voted a provisional salary to the officers and they accepted the same as such. When the latter met informally and authorized the auditor to set up a different amount, their action finally established their real salaries for the year.
The votes established a provisional salary. The exact amount of salary was established by the informal oral agreement and was dependent upon the financial condition of the corporation and its business for the year, and was independent of the amount voted.
The weekly drawing account voted was always safely within the provisional salary, ‘ ‘ the balance to be paid from time to time as the board of directors shall deem expedient.” The amount of this balance was established when the salary was finally determined and the balance, if any, was credited to the officers’ accrued salaries account.
*291 While the corporation had the right to exercise sound discretion as to the time and manner of payment of these accruals, it cannot merely on grounds of expediency relieve itself from any ultimate obligation to pay.
To the “Accrued Officers Salaries Account” was carried each year the difference between what each received and the amount they orally agreed should constitute their salaries. For the years 1928 and 1930 said officers authorized the cancellation of a portion of said account as it then stood on the books of the corporation.
After a conference, relative to the condition of the corporation, held in April 1933, the directors, in May 1933, at a meeting, voted:
1. To rescind all prior votes on the matter of salaries for the officers.
2. That all claims of accrued officers salaries be stricken from the records.
All the directors, including Agersea and the plaintiff, voted in favor of said resolutions.
If the votes were accepted by the officers they would amount to a cancellation of said officers’ claims to their accrued salaries. The acceptance of each officer, however, would be conditional upon the good faith of the other. As a matter of fact the item, Accrued Officers Salaries, was never stricken from the books or reports of the corporation, but has been carried from year to year to date.
The plaintiff severed his connection with the corporation on December 30, 1933, and transferred his stock to the corporation, although his contract for the sale thereof was with Agersea. Some of said stock was then sold to a new stockholder and the balance kept by Agersea.
The accrued salary account of Collamore still remained on the books and to the account of Agersea amounts had been added each year since December 30, 1933.
*292 The trial court interpreted the second vote, “if not rendered ineffective otherwise, to be one purporting to cancel the amounts of accruals as they then appeared on the books of the corporation,” and made the following finding:
“On all the evidence I find that while Agersea, as a director, voted in favor of the motion made at said meeting of May 1933, he, as an officer, never intended to sacrifice his claim for accrued officers ’ salaries, and when he gained control of the corporation he ordered his yearly accruals to be continued. Inasmuch as Collamore’s implied acceptance of said votes was conditioned upon the acceptance by Agersea, and inasmuch as Agersea in the capacity of officer never did accept said votes, I find that said votes were not in fact accepted by Collamore. They have no effect on his claim for accruals.”
Collamore spent little time during November 1933, and in December he rendered no services to the defendant but engaged in setting up a woodworking business of his own. For the year 1933 the salary voted to each was $2700.00. Agersea received this amount in cash and accruals. Collamore did not abandon the corporation but transferred his holding by mutual agreement between Agersea and himself satisfactory to both.
The court found the plaintiff was entitled to 11/12 of $2700.00 or $2475.00 as salary for 1933 and that he actually received $1539.50, leaving a balance due him for that year of $935.50. That for the year 1927 Agersea received $6544.52 and Collamore $6163.61. Collamore should have been credited with $380.91 for the year and found “the failure to include this amount was a mistake.” The accruals were kept in a running account and the trial court ruled this claim was not barred by the statute of limitations.
The court found the plaintiff was entitled to recover the following amounts: $967.94, which is the amount credited *293 to Ms account on the hooks as accruals up to and including December 31, 1932; $380.91, balance for the year 1927, wMch should have been included and carried along in said accruals; $935.50 for the year 1933; making a total of $2284.35, upon which interest is allowed from the date of demand, May 30, 1934, to the date of the writ.
The defendant seasonably filed sixteen requests for rulings. Those now relied on are as follows:
1. An officer of a corporation on a yearly salary payable in weekly installments who abandons his office prior to the completion of the year is not entitled to any salary for the remainder of the year.
2. If the plaintiff entered into a contract for service for a certain term at a stated price for the whole term and voluntarily left that service before completion of that term without justifiable cause he can maintain no action to recover a compensation for any services actually performed under the contract.
8. Where one with full knowledge of the facts remains silent when it is Ms duty to speak and another acts to his detriment, the former is estopped to set up a claim against the latter upon wMch his silence depends.
9. A claim for a balance due for services rendered under a yearly contract bearing date more than six years before the commencement of the action is barred by the Statute of Limitations.
15. If the declaration does not allege date payment of debt was demanded interest is calculable from date of writ.
The trial court disallowed numbers 1, 2, 8 and 9 on facts found and stated “It is not necessary to rule specifically on requests 15 and 16 as the subject matter is covered sufficiently in decision.”
We consider the defendant’s first and second requests together. It was said in Mark v. Stuart-Howland Co., 226 Mass. 35, 43:
“It is the general rule that, where one breaks a contract to be performed for an entire price, he cannot recover on the contract, because he has not performed it, nor *294 on a quantum meruit, because Ms voluntary failure to complete Ms agreement prevents recovery, save in restricted instances where there has been an honest intention to go by the contract. Homer v. Shaw, 177 Mass. 1; S. C. 212 Mass. 113.”
See also Frati v. Jannini, 226 Mass. 430, 434, and cases cited.
In the instant case the trial judge found the salary of both the plaintiff and Agersea for the year 1933 was fixed at $2700.00 payable weekly. He also found that the plaintiff did not abandon his employment but severed his connection with the defendant by mutual consent.
Those were questions for the court in his fact finding capacity. Fisk v. New England Tire & Supply Co., 244 Mass. 364, 373.
“It could not be ruled as matter of law that the plaintiff voluntarily gave up his employment on the understanding that he waived all claim for services rendered.”
Whereas here the contract of employment was terminated by mutual consent, the rule stated in Mark v. Stuart-Howland Co., supra, at page 373, the court said:
“And the argument that his resignation. which had been accepted operated as a cancellation of the defendant’s indebtedness cannot be sustained. The contract under the circumstances was terminated by mutual consent after substantial performance by the plaintiff of which the defendant had the benefit.”
The value of the services rendered to the corporation by the plaintiff also presented a question of fact. It has not been claimed that the rule of damages applied by the court was incorrect.
The manner in wMch the trial judge dealt with said request was without error.
*295 The defendant’s eighth request raises the issue of whether the plaintiff is estopped to make claim for his back salary shown to be due him on the books of the defendant.
It was said in Greenwood v. Martin’s Bank Ltd. (1933) A. C. 51-57, cited with approval in Cleaveland v. Malden Savings Bank, Mass. Adv. Sh. (1935) 1685, 1687:
“The essential factors giving rise to an estoppel are (1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3) Detriment to such person as a consequence of the act or omission. ’ ’
The doctrine of estoppel is also stated by our Court in Boston & Albany Railroad v. Reardon, 226 Mass. 286, 291, and is quoted in McLearn v. Mill, 276 Mass. 519, 524, and again in Looney v. Trimount Theatres, Inc., 282 Mass. 275, 278.
“In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow. But the doctrine of estoppel is not applied except when to refuse it would be inequitable. The law does not regard estoppels with favor, nor extend them beyond the requirements of the transactions in which they originate.”
And in McLearn v. Hill, supra, at page 525, and in Looney v. Trimount Theatres, Inc., supra, at page 278, the court quoted wdth approval from Howard v. West Jersey & Seashore Railroad, 102 N. J. Eq. 517, 521.
*296 “Also, it should be noted that while the doctrine of estoppel in pais rests upon the ground of fraud, it is not essential that the representations or conduct giving rise to its application should be fraudulent in the strictly legal significance of the term, or with intent to mislead or deceive; the test appears to be whether in all the circumstances of the case conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct; whether the author of a proximate cause may justly repudiate its natural and reasonably anticipated effect; fraud, in the sense of a court of equity, properly including all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.”
And it was said in Bloomfield v. Charter Oak Bank, 121 U. S. 121, 135:
“No estoppel in pais can be created, except by conduct which the person setting up the estoppel has the right to rely upon, and does in fact rely and act upon.”
And in Schiller v. Metropolitan Life Insurance Co., Mass. Adv. Sh. (1936) 1581, 1585, the court said:
“A party who has knowledge of the facts cannot rely upon estoppel because he was not misled to his harm.”
Whether an estoppel has been established is a question of fact where it is possible to draw more than one inference from the evidence. Angello v. Hanover Trust Company, 253 Mass. 160, 167. Boston & Albany Railroad, 226 Mass. 286, 291.
In Commonwealth Finance Corp. v. Holland System, 263 Mass. 10, 14, the court said:
“It was'for the jury on all the evidence to find whether the plaintiff’s agent, by remaining passive at a time when his silence might produce an erroneous impression, created an estoppel.”
*297 There is nothing in the report to indicate that the defendant relying upon the silence took any action whatever. The dealings having to do with the plaintiff’s withdrawal from the corporation were with Agersea. He is not a party to this action. His accrued salary account, like the plaintiff’s, remained upon the books of the corporation as a liability. So far as the defendant was concerned its position remained unchanged except that its capital stock was held by other persons.
We cannot say the findings and rulings of the trial judge on this branch of the case were unwarranted in any possible view of the evidence. Moss v. Old Colony Trust Company, 246 Mass. 139, 143.
The defendant’s ninth request called the attention of the trial court to its claim that the statute of limitations, G. L. (Ter. Ed.) ch. 260, §2, was a bar to the recovery of that part of the plaintiff’s salary for 1927, which through error was not credited to his account.
As to this item the trial judge found that it was omitted from the account by mistake when the books were closed for the year 1927 and that the account was a running account against which the statute of limitations was not a defence. G. L. (Ter. Ed.) ch. 260, §6.
The “Accrued Officers’ Salaries” account, which contains the error out of which this claim arises, appears was made up of the difference between the amount of salary voted to each officer at the end of the year and the amount which had been drawn by him during the year. These balances were carried to said account annually.
It was argued by the plaintiff and found by the trial judge that this salary account was a “running account,” meaning a “mutual and open account current,” against which, by virtue of G. L. (Ter. Ed.) ch. 260, §6, “shall be held to have accrued at the time of the last item proved in the account.”
*298 It was said in Safford v. Barney, 121 Mass. 300, that it is sufficient to prove mutual dealings between the parties, consisting of sales made or services performed by each party to or for the other, creating mutual debts, and which, by mutual agreement, are to be set off against one another. And see Howland v. Stowe, Mass. Adv. Sh. (1935) 781. The account under consideration is not a record of such dealings and is not a “mutual and open account current.” See Day v. Mayo, 154 Mass. 472, 473. In ruling that it was, the trial court was in error.
-But the plaintiff claims that there were partial payments within six years from the .time said error was made and relies upon G. L. (Ter. Ed.) ch. 260, §14, as entitling him to. prevail..
There were constant payments on account of salary made by the defendant to the plaintiff up to November 1933, many of them well within six years next before the date of the writ. These payments were sufficient to prevent the running of the period of limitation. Day v. Mayo, 154 Mass. 472, 474. Turner v. Buttrick, 272 Mass. 261, 264. Kennedy v. Drake, 225 Mass. 303, 308.
- It follows.that the trial judge was correct in disallowing request number 9.
■ We must treat the court’s dealing with requests number 15 .and. 16 as a denial thereof. Kravetz v. Lipofsky, Mass. Adv. Sh. (1936) 761, 764.
The court found a demand was made on May 30, 1934, and allowed interest from said date to the date of the writ. From the report it also appears that the declaration made claim for interest.
It was proper for the judge to determine the date of demand and to allow interest from that date to the date of the writ.
No prejudicial error appears and the report is dismissed.